
**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JAN 0 8 2015

~madsen CQ~
CHIEF JUSTICE

This opinion was filed for record
at 8:00AM on Jan 3, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| ASSOCIATION OF WASHINGTON SPIRITS AND WINE DISTRIBUTORS, )<br><br>Appellant, )<br><br>v. )<br><br>WASHINGTON STATE LIQUOR CONTROL BOARD, )<br><br>Respondent, )<br><br>and )<br><br>WASHINGTON RESTAURANT ASSOCIATION, NORTHWEST GROCERY ASSOCIATION, and COSTCO WHOLESALE CORPORATION, )<br><br>Intervenor-Respondents. ) | No. 90561-4<br><br>En Banc<br><br>Filed ___JAN 0 8 2015___ |

WIGGINS, J.—We granted direct review of this challenge to the Washington State Liquor Control Board's (Board) spirits distribution licensing fee structure brought by Association of Washington Spirits and Wine Distributors (Association). The Association, a trade group composed of distributors licensed under RCW 66.24.055, challenges the Board's decision to exempt distillers who distribute their own manufactured spirits and others acting as distributors pursuant to certificates of approval from contributing to a shortfall of $104.7 million in licensing fees imposed on

persons holding spirits distributor licenses. The Association asks us to hold that the distillers must contribute proportionately to eliminating the shortfall.

We reject the Association's arguments. The plain language of Initiative Measure No. 1183 (Initiative), supported by the context in which the language appears and the overall scheme for licensing participants in the spirits industry, enables the Board to impose the entire shortfall on the spirits distributors without contribution from the distillers. We therefore hold that the Board acted within its authority and did not act arbitrarily or capriciously. Additionally, the Board did not violate the privileges and immunities clause of article I, section 12 of the Washington State Constitution. The decision of the Thurston County Superior Court is affirmed.

FACTS

I. History and Overview of Washington's Liquor Control Laws

Washington adopted the Washington State Liquor Act (Liquor Act) to regulate intoxicating liquors following the repeal of federal law prohibiting the manufacture, sale, or transportation of alcoholic beverages. LAWS OF 1933, EX. SESS., ch. 62; Title 66 RCW. The Liquor Act created the Washington State Liquor Control Board, RCW 66.08.012, and established distinct regulatory systems to control the distribution and sale of different types of liquor. *Wash. Ass'n for Substance Abuse & Violence Prevention v. State*, 174 Wn.2d 642, 647, 278 P.3d 632 (2012). The legislature enacted a three-tier system to govern the distribution and sale of beer and wine, which provided different regulations and licensing requirements for manufacturers, distributors, and retailers. *Id.* This three-tier system allowed the State to control the prices at which manufacturers and distributors sold beer and wine. *Id.* at 648.

2

However, unlike the system that applied to beer and wine, only the State could distribute and sell spirits.[1] *Id.* (citing former RCW 66.16.010 (2005); Wash. State Liquor Control Bd., FY 2010 Annual Report 9-10, *available at* http://www.liq.wa.gov/publications/2010-annual-report-final-web.pdf).

In 2011, Washington voters passed the Initiative, which dramatically changed the State's approach to regulating the distribution and sale of liquor in Washington. *Id.* at 649. The Initiative ended the State's exclusive rights to distribution and retail sales, allowing private distributors to become licensed to distribute spirits and permitting a limited number of retail stores to sell spirits. The Initiative imposes licensing fees in exchange for the ability to sell and distribute spirits. There are currently four different licenses in Washington that allow the distribution of spirits.

Petitioner Association is a trade group of distributors operating pursuant to "[s]pirits distributor license[s]." RCW 66.24.055(1) (boldface omitted). A "spirits distributor license" is the broadest grant of authority to distribute under the Initiative, authorizing the licensee to purchase spirits from manufacturers, distillers, or other suppliers and resell the spirits to a variety of establishments. *Id.* This license places very few limits on the sources from which a licensee may purchase or distribute spirits.

In addition to the distribution rights granted to licensees through a "spirits distributor license," RCW 66.24.055, licensed in-state distillers may distribute their own products directly to retailers. RCW 66.24.640. Distillers who choose to distribute

---

[1] "Spirits" means "any beverage which contains alcohol obtained by distillation, except flavored malt beverages, but including wines exceeding twenty-four percent of alcohol by volume." RCW 66.04.010(41).

their own spirits enjoy limited distribution rights. *See* RCW 66.24.140, .640; WAC 314-28-030(1). Importers and out-of-state spirits distillers may also act as distributors by obtaining one of three "certificates of approval." RCW 66.24.640; WAC 314-23-030(2). These certificates provide specific, limited distribution authority to manufacturers, importers, or bottlers. RCW 66.24.640; WAC 314-23-030(2). We refer to the certificate holders and the distiller distributors collectively as "distillers" because they are treated similarly as to the fees at issue here.

In addition to the basic licensing fees imposed on spirits distributors, distillers distributing their own products, and other certificate holders, RCW 66.24.055(3) created two fees designed to replace the revenue that the State lost when spirits distribution was privatized. *See generally Wash. Ass'n for Substance Abuse & Violence Prevention*, 174 Wn.2d at 671 (Wiggins, J., dissenting) (citing LAWS OF 2012, ch. 2 § 101(2)(k) (codified at RCW 66.24.055(3))). Subsection (3)(a)(i) imposes a 10 percent[2] fee of all spirits sales by "spirits distributor licensee[s]" (subsection (3)(a) percentage fee). Subsection (3)(c) provides that if the subsection (3)(a) percentage fee did not generate $150 million in the first year under the new statute, the shortfall between the collected fees and $150 million was to be equitably assessed against "all persons holding spirits distributor licenses," according to rules to be promulgated by the Board (subsection (3)(c) shortfall fee).

---

[2] This fee drops to five percent of total revenue 28 months after licensure. RCW 66.24.055(3)(a)(ii).

The entire dispute in this case comes down to who must contribute to payment of the subsection (3)(c) shortfall fee. The Association argues the distillers must contribute, and the Board argues the opposite.

Acting under its rule-making authority under the Washington Administrative Procedure Act, chapter 34.05 RCW, the Board determined that distillers distributing their own spirits are subject to the subsection (3)(a) percentage fee. WAC 314-23-030. The Board later adopted WAC 314-23-025 to enforce the subsection (3)(c) shortfall fee. Although the Board had imposed the subsection (3)(a) percentage fee on distillers, the Board did not require the distillers to contribute to subsection (3)(c) shortfall fee. Rather, the Board determined that the shortfall fee would be imposed only on "persons holding a spirits distribution license." WAC 314-23-025. Thus, while the Board requires that both distributors and distillers pay the subsection (3)(a) percentage fee, only distributors paid the subsection (3)(c) shortfall fee.

In 2012, businesses holding spirits distributor licenses generated nearly $450 million in sales. The distillers generated approximately $15 million in sales arising from their distribution rights; the $1.5 million fees collected from these sales did not contribute to the $150 million statutory requirement. The combined fees assessed on persons holding a spirits distributor license totaled just over $45.3 million, leaving a $104.7 million shortfall. Pursuant to WAC 314-23-025, spirits distributor license holders paid this entire amount. The overwhelming majority of sales in Washington were from spirits distributors; had the distillers been required to pay the subsection (3)(c) shortfall fee, the distillers would have been responsible for only $3 million of what would have been a $103.2 million shortfall.

II. Procedural History

The Association sought a declaratory judgment pursuant to the Washington Administrative Procedure Act, RCW 34.05.570(2)(c), that WAC 314-23-025 is invalid. After hearing oral argument, the superior court acknowledged that the Board had taken arguably inconsistent positions with respect to the distillers. Nonetheless, the court denied the petition, rejecting the Association's assertions that the Board exceeded its statutory authority or violated the privileges and immunities clause. The Association appealed, and we granted direct review.

ANALYSIS

I. Standard of Review

The Washington Administrative Procedure Act governs the standard of review of a challenge to an agency rule. Under RCW 34.05.570(2)(c), an agency rule may be invalidated only if it (1) violates constitutional provisions, (2) exceeds the agency's statutory rule-making authority, (3) is arbitrary and capricious in that it could not have been the product of a rational decision-maker, or (4) was adopted without complying with statutory rule-making procedures. Determining the extent of rule-making authority is a question of law. *Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 645, 62 P.3d 462 (2003).

"'We review questions of statutory interpretation de novo.'" *State v. Veliz*, 176 Wn.2d 849, 853-54, 298 P.3d 75 (2013) (quoting *State v. Morales*, 173 Wn.2d 560, 567 n.3, 269 P.3d 263 (2012)). The court discerns legislative intent from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions,

6

amendments to the provision, and the statutory scheme as a whole. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

Constitutional issues are questions of law that we also review de novo. *State v. Gresham*, 173 Wn.2d 405, 419, 269 P.3d 207 (2012). We presume that statutes are constitutional and place "'the burden to show unconstitutionality . . . on the challenger.'" *In re Estate of Hambleton*, _ Wn.2d _, 335 P.3d 398, 406 (2014) (alteration in original) (quoting *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 215, 143 P.3d 571 (2006)).

II.    The Board Acted within Its Statutory Rule-Making Authority

We hold that WAC 314-23-025 was properly promulgated pursuant to the explicit directions of RCW 66.24.055(3)(c). The rule closely tracks the statutory language and is consistent with the purpose and intent of the statute that it implements. We therefore affirm the superior court.

A. *WAC 314-23-025 follows the plain language of the subsection (3)(c) shortfall fee*

RCW 66.24.055 establishes a "spirits distributor license" that grants spirits distributors broad authority to purchase and distribute spirits. As the superior court recognized, and the parties do not dispute, the statute is unambiguous. The statute precisely defines the scope of the license that it creates, and it precisely defines the fees attendant to obtaining that license. *See W. Telepage, Inc. v. City of Tacoma Dep't of Fin.*, 140 Wn.2d 599, 609, 998 P.2d 884 (2000) (statute is not ambiguous if it defines precisely the range of activity that falls within its purview). Courts are not obligated to

discern an ambiguity by imagining a variety of alternative interpretations. *Id.* at 608 (citing *State v. Tili*, 139 Wn.2d 107, 115, 985 P.2d 365 (1999)).

To begin with, the language of RCW 66.24.055(3)(c) is clear: "[A]ll persons holding spirits distributor licenses on or before March 31, 2013, must have paid collectively one hundred fifty million dollars or more in spirits distributor license fees." When a statute is clear on its face, we look only to the wording of the statute. *W. Telepage, Inc.*, 140 Wn.2d at 609. Because the terms are defined within the statute, we need not look outside the statute to determine their meaning. *State v. Smith*, 117 Wn.2d 263, 271, 814 P.2d 652 (1991) ("'Words are given the meaning provided by the statute or, in the absence of specific definition, their ordinary meaning.'" (quoting *State v. Standifer*, 110 Wn.2d 90, 92, 750 P.2d 258 (1988))).

In addition to this clear and unambiguous language, the context of the statute also supports this interpretation. When we interpret a statute, we look to its placement within the entire statutory scheme. *Campbell & Gwinn*, 146 Wn.2d at 9-10. Applying this principle, it is clear that the provisions of RCW 66.24.055 are geared specifically toward distributors.

When we consider context, the Initiative clearly created several different licenses; each licensee operates under a unique classification with unique rights and attendant responsibilities. For example, distiller licenses allow entities to "blend[], rectify[,] and bottl[e]" spirits. RCW 66.24.140. Likewise, "spirits importer licenses," RCW 66.24.160, and "spirits . . . certificate of approval" licenses, RCW 66.24.640, have their own specific legal definitions. The "spirits distributor license" is created and defined by RCW 66.24.055(1), and subsection (3)(c) requires "all persons holding

8

spirits distributor licenses" to pay "collectively one hundred fifty million dollars or more in spirits distributor license fees." Thus, the plain language of the subsection (3)(c) shortfall fee applies only to persons holding the specifically defined "spirits distributor license" created in subsection (1).

The organization of RCW 66.24.055 provides further support. Subsection (1) defines the spirits distributor license as authorizing the sale of spirits purchased from a variety of sources to retailers and a number of other entities. The subsection also authorizes export of any of the spirits purchased by the distributor.

Subsections (3) and (4) of RCW 66.24.055 describe the fee structure for the spirits distributor license. Subsection (3)(a) imposes a fee of 10 percent (eventually dropping to 5 percent) on the sale of spirits, and subsection (3)(b) clarifies that the fee is imposed only if the distributor is the first distributor in the State to have received the spirits for sale. Additionally, subsection (3)(d) clarifies that a retailer must pay the fee on sales if no spirits distributor has paid the fee on the spirits sold. Subsection (4) provides that a spirits distributor must pay an annual license fee of $1,320 for each licensed location. Analyzing the subsection (3)(c) shortfall fee in this context, it is clear that the subsection specifically applies to persons holding spirits distributor licenses and that persons with that license must pay the shortfall fee.

This interpretation of the subsection (3)(c) shortfall fee is also supported by the Initiative when read as a whole. The Initiative specifically refers to "spirits distributor licensees" when it imposes requirements on that class and uses the term "other licensee[s] acting as a [spirits] distributor pursuant to [Title 66 RCW]" when it places

specific requirements on other licensees.[3] Different statutory language should not be read to mean the same thing: "[w]hen the legislature uses different words in the same statute, we presume the legislature intends those words to have different meanings." *In re Pers. Restraint of Dalluge*, 162 Wn.2d 814, 820, 177 P.3d 675 (2008) (Sanders, J., dissenting).

B. *The Board's interpretation of the subsection (3)(a) percentage fee does not change the clear meaning of the subsection (3)(c) shortfall fee*

The Association responds to the plain language arguments by asserting that RCW 66.24.055(3)(a) directs that "each spirits distributor licensee" pay a fee of 10 percent of sales. Subsection (3)(c) then provides that "persons holding spirits distributor licenses" must contribute proportionately to any shortfall between the 10 percent fee and $150 million. The Association reasons that distillers who distribute their spirits to retailers are acting as "spirits distributor licensee[s]" under subsection (3)(a) and are therefore "persons holding spirits distributor licenses" under subsection (3)(c). Thus, the Association reasons that distillers must contribute to the $150 million shortfall proportionately based on their total distribution of their products. In making this argument, the Association also points out that RCW 66.24.640 and RCW 66.28.330(4) requires that distillers who distribute their own spirits must comply with the applicable statutes and regulations relating to distributors. Hence, the Association

---

[3] For example RCW 66.28.330(1) reads, "No price for spirits sold in the state by a distributor or *other licensee acting as a distributor* pursuant to this title may be below acquisition cost . . . ." (emphasis added). For additional examples of statutory language placing specific requirements on other licensees acting as distributors, *see* LAWS OF 2012, ch. 2 § 106, *codified at* RCW 82.08.150(2), (3), (5), (6)(c).

argues, the shortfall provision of subsection (3)(c) is one of those "applicable laws and rules relating to distributors" under RCW 66.24.640.

These arguments would have little appeal were it not for the fact that the Board adopted a rule pursuant to RCW 66.24.055(3)(a) and WAC 314-23-030, imposing the subsection (3)(a) percentage fee on distillers and raising the question as to why the Board didn't also apply the subsection (3)(c) shortfall fee to the distillers. The Association's reading of the subsection (3)(c) shortfall fee might be consistent with the Board's representations regarding the subsection (3)(a) percentage fee to the Superior Court in *Costco Wholesale Corp. v. Liquor Control Board*, No. 12-2-01312-5 (Thurston County Superior Court June 14, 2013). In *Costco*, Costco challenged WAC 314-23-030, promulgated pursuant to RCW 66.24.055(3)(a). The Board asserted that "distillers or certificate of approval holders acting as distributors *must comply with all laws applicable to distributors*" as justification for its successful argument that "distillers and certificate of approval holders who choose to distribute their products are subject to the 10% distributor fee." *Wash. Restaurant Ass'n v. Liquor Contr. Bd.*, No. 12-2-01312-5, Br. of Resp't at 20-21. The Board makes no serious attempts[4] to distinguish its conflicting positions interpreting the language of the subsection (3)(a) percentage fee and the subsection (3)(c) shortfall fee, instead acknowledging that the

---

[4] The Board now argues, contrary to its assertions in *Costco*, that its broad regulatory authority to impose licensing fees justifies imposing a 10 percent fee on certificate of approval holders. Br. of Resp't at 16. Whether or not this argument has merit, the propriety of WAC 314-23-030 is not at issue in this case. Furthermore, the point is irrelevant in addressing WAC 314-23-025: RCW 66.24.055(3)(c) unambiguously authorizes the Board to collect the shortfall fee from "persons holding spirits distributor licenses."

purpose behind the broad reading of the subsection (3)(a) percentage fee was to maximize the State's revenue.

The Association argues that the Board must adhere to its position in *Costco* and apply the subsection (3)(c) shortfall fee to distillers just as it applied the subsection (3)(a) percentage fee to distillers. Essentially, the Association argues that the Board correctly interpreted subsection (3)(a) in promulgating WAC 314-23-030, and incorrectly interpreted subsection (3)(c) when promulgating WAC 314-23-025. It then presumes that we should give deference to the Board's interpretation of subsection (3)(a) and that the Board's analysis should control our interpretation of subsection (3)(c).

This argument misses the mark: the propriety of WAC 314-23-025 does not depend on the propriety of a separate regulation. We do not require agency expertise in construing an unambiguous statute, and we do not defer to an agency determination that conflicts with the statute. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 628, 869 P.2d 1034 (1994). RCW 66.24.055(3)(c) requires "all persons holding spirits distributor licenses on or before March 31, 2013, [to pay] collectively one hundred fifty million dollars or more in spirits distributor license fees," and WAC 314-23-025 explicitly assigns liability for the shortfall to "persons holding a spirits distributor license." We hold that subsection (3)(c) is unambiguous, and furthermore, we are not bound by the Board's interpretation of subsection (3)(a) in promulgating WAC 314-23-030.

For these reasons, we decline to address the subsection (3)(a) percentage fee and instead apply well-established rules to construe the issue before us—the language of the subsection (3)(c) shortfall fee.

### C. The specific language of the subsection (3)(c) shortfall fee controls

Having concluded that the Board's interpretation of RCW 66.24.055(3)(a) does not control this case, we next address the Association's substantive argument that that the subsection (3)(c) shortfall fee is one of the "applicable laws and rules relating to distributors" under RCW 66.24.640. The Association is correct that RCW 66.24.640 and RCW 66.28.330(4) authorize distillers to act as distributors provided that they comply with the applicable statutes and regulations relating to distributors. However, this argument fails because the general statutory provisions of RCW 66.24.640 and RCW 66.28.330(4) do not supersede the specific provisions of subsection (3)(c).

A general statutory provision must yield to a more specific statutory provision. *Waste Mgmt. of Seattle*, 123 Wn.2d at 629-30; *see also Kustura v. Dep't of Labor & Indus.*, 169 Wn.2d 81, 88, 233 P.3d 853 (2010) (general statutory provisions inapplicable in light of statutory provision that "specifically addresse[d] and definitively establish[ed]" the question before the court). The parties agree with this legal principle; their disagreement concerns whether the fees assessed pursuant to RCW 66.24.055(3)(c) are "applicable laws" "relating to distributors" or whether they are specific provisions that should be considered separately. We hold that they are specific fee provisions that relate only to "persons holding spirits distributor licenses."

RCW 66.24.640 and RCW 66.28.330(4) are general statutory provisions. RCW 66.24.640 provides in relevant part:

13

> Any distiller licensed under this title may act as a retailer and/or distributor to retailers . . . . An industry member operating as a distributor and/or retailer under this section must comply with the applicable laws and rules relating to distributors and/or retailers . . . .

Similarly, RCW 66.28.330(4) provides:

> A distiller holding a license or certificate of compliance as a distiller under this title may act as distributor . . . . The distiller must, to the extent consistent with the purposes of chapter 2, Laws of 2012, comply with all provisions of and regulations under this title applicable to wholesale distributors selling spirits to retailers.

These statutes provide distilleries with the option of distributing some or all of their products directly and require the distilleries to generally comply with the requirements of distributors when they do so. However, neither statute requires the distillery to receive a "spirits distributor license"—RCW 66.24.640 expressly contemplates distillers' distributing either pursuant to a distiller's license, RCW 66.24.140, or pursuant to a more limited certificate of approval. Importantly, neither statute addresses the licensing fee structure or imposes additional licensing fees on distillers.

In contrast, RCW 66.24.055(3) and (4) relate specifically to licensing fees for "spirits distributor licenses." Each "spirits distributor licensee" must pay $1,320 annually for each licensed distribution location. RCW 66.24.055(4). Distilleries generally pay $2,000 per annum, and other entities distributing pursuant to certificates of approval pay $200 for each authorization. RCW 66.24.140; WAC 314-23-030(2). It would make no sense to conclude that the distillers must pay the same annual license fee as a distributor simply because the distiller distributes its own product. For this

reason, we conclude that the fees charged to each class of license are specific and that the provisions of RCW 66.24.640 and RCW 66.28.330(4) are general.

Because we hold that RCW 66.24.055(3)(c) specifically describes licensing fees for the spirits distributor license, the specific language assigning liability for the shortfall provision to "persons holding spirits distributor licenses" trumps the general requirement that other licensees acting as distributors comply with "applicable laws" "relating to distributors."[5] RCW 66.24.640. We hold that subsection (3)(c) is specifically applicable to "persons holding spirits distributor licenses" and that the general provisions of RCW 66.24.640 and RCW 66.28.330(4) do not render the subsection (3)(c) shortfall fee applicable to distillers distributing their own spirits.

Furthermore, as discussed in part I(A) of this opinion, *supra*, other sections in the Initiative explicitly distinguish requirements placed upon "persons holding a spirits distributor license" and "other licensees acting as a spirits distributor pursuant to Title 66 RCW." Contrary to the Association's arguments, providing different meanings based on these distinctions in the statutory language does not necessarily render the term "applicable" in RCW 66.24.640 redundant or superfluous. Courts do not woodenly apply limiting principles merely because the legislature includes both general clauses and specific clauses. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227, 128 S. Ct. 831, 169 L. Ed. 2d 680 (2008) (citing *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 589 n.6, 100 S. Ct. 1889, 64 L. Ed. 2d 525 (1980). The Board's rule properly

---

[5] In reaching this conclusion, we do not opine on the Board's interpretation of the subsection (3)(a) percentage fee, as it is not properly before this court. The subsection (3)(a) percentage fee uses different language than the subsection (3)(c) shortfall fee and is related to the requirements of subsection (3)(b).

harmonizes the general statutory provisions applicable to distillers with the specific language of the subsection (3)(c) shortfall fee.

III.    The Board's Actions Were Neither Arbitrary Nor Capricious

The Association asks the court to invalidate WAC 314-23-025 because the rule is arbitrary and capricious. RCW 34.05.570(2)(c). A rule is arbitrary or capricious only if it is willful, unreasoning, and taken without regard to the attending facts or circumstances. *Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n*, 148 Wn.2d 887, 905, 64 P.3d 606 (2003); *D.W. Close Co. v. Dep't of Labor & Indus.*, 143 Wn. App. 118, 130, 117 P.3d 143 (2008). "'[W]here there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous.'" *Rios v. Dep't of Labor & Indus.*, 145 Wn.2d 483, 501, 39 P.3d 961 (2002) (alteration in original) (quoting *Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 383, 932 P.2d 139 (1997)). The scope of review under an arbitrary and capricious standard is very narrow, and the party asserting it carries a "'heavy burden.'" *King County Pub. Hosp. Dist. No. 2 v. Dep't of Health*, 167 Wn. App. 740, 749, 275 P.3d 1141 (2012) (internal quotation marks omitted) (quoting *Alpha Kappa Lambda Fraternity v. Wash. State Univ.*, 152 Wn. App. 401, 422, 216 P.3d 451 (2009)).

The Association's arguments fail to carry this heavy burden. The language of WAC 314-23-025 closely tracks the language of the statute it implements, and the Association merely repeats its statutory interpretation arguments that WAC 314-23-030 and WAC 314-23-025 are "logically inconsistent." We therefore hold that the Association has not demonstrated that the Board's actions were arbitrary and capricious.

IV.   The Board did not violate the privileges and immunities clause

Article I, section 12 of the Washington Constitution provides that "[n]o law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations." We interpret our privileges and immunities clause independently of the federal clause. *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 811, 83 P.3d 419 (2004). We apply a two-step analysis to article I, section 12. *Ockletree v. Franciscan Health Sys.*, 179 Wn.2d 769, 776, 317 P.3d 1009 (2014). The first step is to determine whether the law in question involves a privilege or immunity; if not, then article I, section 12 is not implicated. *Id.* (citing *Grant County*, 150 Wn.2d at 812). If there is a privilege or immunity, the second step is to determine whether the legislature had a "reasonable ground" for granting the privilege or immunity. *Id.* (citing *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 145 Wn.2d 702, 731, 42 P.3d 394 (2002)).

The Association cannot establish that the law involves a privilege or immunity. The Association alleges that WAC 314-23-025 infringes on their "'right to . . . carry on business therein,'" a long-recognized privilege under our constitution. *Grant County*, 150 Wn.2d at 812-13 (quoting *State v. Vance*, 29 Wash. 435, 458, 70 P. 34 (1902)). We instead interpret the Association's argument to be that WAC 314-23-025 impacts its members' ability to sell and distribute spirits and dismiss their privileges and immunities claim.

A "privilege" is an exception from a regulatory law that benefits certain businesses at the expense of others. *Am. Legion Post No. 149 v. Dep't of Health*, 164

Wn.2d 570, 607, 192 P.3d 306 (2008) (citing Jonathan Thompson, *The Washington Constitution's Prohibition on Special Privileges and Immunities: Real Bite for "Equal Protection" Review of Regulatory Legislation?*, 69 TEMP. L. REV. 1247, 1268 (1996)). We have held that the "right to carry on business therein" is implicated by a municipal ordinance that attempted to insulate resident photographers from out-of-state competition by imposing prohibitive licensing fees and solicitation restrictions on itinerant photographers. *See Ralph v. City of Wenatchee*, 34 Wn.2d 638, 641, 209 P.2d 270 (1949). We have also rejected attempts to assert the right to carry on business when a narrower, nonfundamental right is truly at issue. *See, e.g., Am. Legion Post No. 149*, 164 Wn.2d at 607-08 (rejecting an attempt to characterize "[s]moking inside a place of employment" as the fundamental right to "carry on business therein").

*Ralph* involved an action to enjoin the enforcement of a municipal ordinance that purposefully distinguished between resident and itinerant photographers. 34 Wn.2d at 638-39, 643. The first challenged provision placed substantial licensing fees on itinerant photographers; resident photographers were not required to have a license. *Id.* at 639. The second challenged provision, which prevented all photographers from soliciting business in public places, private homes, and private businesses, was admittedly designed to prohibit the otherwise lawful business activities of itinerant photographers. *Id.* at 639-40, 643. We held that the ordinance unreasonably discriminated against itinerant photographers by requiring licensing fees when resident photographers were not subject to licensing fees. *Id.* at 641. We further held that the second provision unfairly discriminated against a class of

businesses to the benefit of another class of the same business, depriving affected class members of the "'common right to engage in trade.'" *Id.* at 642-44 (quoting *N.J. Good Humor v. Bd. of Comm'rs*, 124 N.J.L. 162, 168, 11 A.2d 113 (1940)).

However, we have rejected arguments that the right to carry on business is infringed by regulations that infringe only on narrower privileges.[6] In *American Legion Post No. 149*, we considered a challenge to the smoking in public places act (Act). 164 Wn.2d 570. The Act limited smoking in both public places and "'in any place of employment'" but specifically exempted "'private facilities'" and "'private enclosed workplace[s], within a public place'" from the smoking ban. *Id.* at 581-82 (alteration in original) (quoting former RCW 70.160.020(2) (1985)). The petitioner argued that because the Act permitted smoking in some facilities but prohibited it in their facility, that the Act violated its fundamental "'right to . . . carry on business therein.'" *Id.* at 607 (quoting *Grant County*, 150 Wn.2d at 812-13). We rejected this characterization because the Act did not "prevent any entity from engaging in business." *Id.* at 608. Instead, we held that the Act "merely prohibits smoking within a place of employment." *Id.* (citing RCW 70.160.030). We therefore characterized the right at issue as "[s]moking inside a place of employment" and found that there was no constitutional privilege involved. *Id.*

The Association's argument that the assignment of different licensing fees for different abilities to sell and distribute spirits burdens its fundamental right to carry on

---

[6] Much of our article I, section 12 jurisprudence has narrowed the classification of the rights asserted. *See, e.g., Grant County*, 150 Wn.2d at 815 ("right" to petition for annexation, which is not a privilege, does not invoke the right to vote or the right to petition the government for a redress of grievances).

business is overbroad. Unlike the statute at issue in *Ralph*, 34 Wn.2d 638, WAC 314-23-025 does not unfairly discriminate against a class of businesses to the benefit of another class of the same businesses; it merely assigns a uniform fee to the class of individuals in Washington who sell spirits with all the rights and responsibilities assigned to a "spirits distribution licensee." The rule also impliedly excludes from the fee persons who sell spirits pursuant to some other, more limited, license. Thus, the Association is more accurately asserting that WAC 314-23-025 impacts their ability to sell and distribute spirits.

The ability to sell and distribute spirits does not implicate a "privilege" under article I, section 12. This court has explicitly recognized the distinction between privileges and rights granted only at the discretion of the legislature when considering claims of disparate treatment of businesses. *See Randles v. Wash. State Liquor Control Bd.*, 33 Wn.2d 688, 694, 206 P.2d 1209 (1949) ("the distinction between a lawful business which a citizen has the right to engage in and one in which he may engage only as a matter of grace of the state" must be considered). Here, the only right asserted is the right to sell liquor under the authority of a license issued pursuant to the State's police power. *See* RCW 66.08.010 (Title 66 RCW is an exercise of the police power of the state). Liquor is different; we have never held that the right to sell liquor is a fundamental right or privilege. *Randles*, 33 Wn.2d at 694 ("there is no natural or constitutional right to engage in the business of selling or dispensing intoxicating liquor"). The Association does not distinguish the *Randles* holding, and it does not argue that it is inapposite to this case. We therefore hold that there is no constitutional privilege involved and thus no violation of article I, section 12. Because

this case does not involve a constitutional privilege, we need not analyze the second prong of our article I, section 12 test—whether the legislature had a reasonable ground for distinguishing between two classifications.

## CONCLUSION

We affirm the superior court and hold that the Board acted within its authority and did not act arbitrarily or capriciously in promulgating WAC 314-23-025. Nor did the Board violate the privileges and immunities clause of article I, section 12 of the Washington State Constitution. The $104.7 million shortfall was properly assessed against, and paid by, distributors holding spirits distributor licenses.

Madsen, J.

WE CONCUR.

Madsen, C.J.

Stephens, J.

Johnson

González, J.

Owens, J.

Gordon McCloud, J.

Fairhurst, J.

Yu, J.