# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WASHINGTON RESTAURANT ASSOCIATION, a Washington non-profit Organization; NORTHWEST GROCERY ASSOCIATION, a non-profit organization; and COSTCO WHOLESALE CORPORATION, a Washington corporation,<br><br>        Appellants/Cross Respondents,<br><br>   v.<br><br>WASHINGTON STATE LIQUOR CONTROL BOARD, a state agency; CHRIS MARR, SHARON FOSTER, and RUTHANN KUROSE, in their official capacities as members of the Washington State Liquor Control Board,<br><br>        Respondents,<br><br>ASSOCIATION OF WASHINGTON SPIRITS AND WINE DISTRIBUTORS,<br><br>        Intervenor-Respondent/Cross Appellant. | No.  48807-8-II<br><br><br><br><br><br><br><br><br><br>PUBLISHED OPINION |

WORSWICK, J. — The parties in this case ask us to decide whether the Washington State

Liquor and Cannabis Board (Board) appropriately promulgated certain rules implementing

Initiative Measure No. 1183, now codified in Title 66 RCW.[1]  The Initiative provided for the

---

[1] The legislature has amended Title 66 RCW a number of times since the passage of Initiative Measure No. 1183.  The amendments did not alter the statutes in any way relevant to this case; accordingly, we cite the current versions of the statutes.

privatization of the distribution and sale of liquor in the state. The rules at issue here are the 10 percent license fee rules,[2] which impose a fee on the spirits revenue of certain private distillers, the sell-and-deliver rules,[3] which require certain distributors to sell and deliver spirits from their licensed premises, and the 24-liter rules,[4] which impose daily limits for selling wine and spirits to certain retailers. The Washington Restaurant Association, Northwest Grocery Association, and Costco Wholesale Corporation (Association) brought a petition for judicial review of these rules before the superior court. The Association of Washington Spirits and Wine Distributors (Distributors) intervened to defend the Board's rules.

The superior court granted in part and denied in part the Association's petition, ruling that the 10 percent license fee rules and the sell-and-deliver rules were valid but that the 24-liter rules were invalid. The Association appeals, arguing that (1) the 10 percent license fee rules are invalid because the Board exceeded its statutory rule-making authority in adopting the rules and (2) the sell-and-deliver rules are invalid because they are arbitrary and capricious. On cross-appeal, the Distributors argue that the superior court erred in determining that the Board exceeded its statutory rule-making authority by adopting the 24-liter rules.

We hold that the 10 percent license fee rules are invalid but otherwise affirm the superior court's order.

---

[2] WAC 314-23-030(3)(b); WAC 314-28-070(3).

[3] WAC 314-23-020(2); WAC 314-24-180(2).

[4] Former WAC 314-02-103(2) (2012); former WAC 314-02-106(1)(c) (2012).

No. 48807-8-II

FACTS

Following the repeal of Prohibition, Washington adopted the Washington State Liquor Act, Title 66 RCW. *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 346, 340 P.3d 849 (2015). Under the Liquor Act, Washington regulated the sale and distribution of spirits through state-owned liquor stores and distribution centers. *See Wash. Ass'n for Substance Abuse & Violence Prevention v. State*, 174 Wn.2d 642, 647, 278 P.3d 632 (2012).

In November 2011, Washington voters passed Initiative No. 1183, which privatized the distribution, sale, and promotion of spirits in the state and created new licenses for private distributors to sell and distribute spirits. The Initiative imposed license fees on private distributors and distillers who sell and distribute spirits. *Ass'n of Wash. Spirits & Wine Distribs.*, 182 Wn.2d at 347. The Initiative also imposed a limit on the retail-to-retail sale of wine and spirits and allowed for retailers to sell liquor either at its licensed premises or at its warehouse facilities. The Initiative is now codified in Title 66 RCW.

Title 66 provides four different licenses that allow for the distribution of spirits and prescribes the licensing fees for each license. 182 Wn.2d at 347. One such license is a spirits distributor license. RCW 66.24.055. Licensed spirits distributors may purchase spirits from in-state and out-of-state distillers, manufacturers, and suppliers and may directly resell the spirits to other retailers. RCW 66.24.055(1)(a).

Another, more specific, license that provides for the distribution of spirits is a distiller's license. RCW 66.24.140, .640. Under RCW 66.24.140, a distiller's license permits an in-state

3

distiller to blend, rectify, and bottle distilled spirits. Distillers must pay an annual license fee of $2,000. RCW 66.24.140(1). Additionally, a licensed in-state distiller may distribute its own spirits directly to retailers. RCW 66.24.140(2)(a)-(b), .640. Out-of-state distillers may distribute their own spirits by obtaining a spirits certificate of approval. RCW 66.24.140, .640. A spirits certificate of approval allows out-of-state distillers and importers to distribute their spirits directly to in-state retailers. *Ass'n of Wash. Spirits & Wine Distribs.*, 182 Wn.2d at 348. Licensed distillers and spirits certificate of approval holders distributing their own spirits under RCW 66.24.640 are required to "comply with the applicable laws and rules relating to distributors." RCW 66.24.640.

Title 66 also governs the manner in which liquor is sold in the state. RCW 66.24.630(1) and RCW 66.24.360(2) limit the quantity of spirits and wine that a licensed retailer can sell to another retailer. Under RCW 66.24.630(1) and RCW 66.24.360(2), "no single sale [of spirits or wine] may exceed twenty-four liters."

Title 66 provides the Board with the power to prescribe fees associated with licenses and to regulate the sale of liquor. RCW 66.08.030(4), (6). Accordingly, the Board promulgated a number of rules to implement Title 66. These rules include WAC 314-23-030(3)(b) and WAC 314-28-070(3)[5] (the "10 percent license fee rules"). The 10 percent license fee rules impose a 10

---

[5] WAC 314-23-030(3)(b) provides that spirits certificate of approval holders must "[p]ay to the board a fee of ten percent of the total revenue from all sales of spirits to retail licensees." WAC 314-28-070(3) provides that a "distillery . . . must pay ten percent of their gross spirits revenue to the board on sales to a licensee."

percent fee on the spirits revenue of distillers and spirits certificate of approval holders who choose to distribute their own spirits. WAC 314-28-070(3). The Board also promulgated WAC 314-23-020(2) and WAC 314-24-180(2)[6] (the "sell-and-deliver rules") and former WAC 314-02-103(2) (2012) and former WAC 314-02-106(1)(c) (2012)[7] (the "24-liter rules"). Clerk's Papers (CP) at 120-21. The sell-and-deliver rules provide that wine and spirits distributors must sell and deliver their products from their licensed premises. Former WAC 314-23-020(2); former WAC 314-24-180(2). The 24-liter rules impose a limit under which off-premises retailers, like a grocery store, may sell only 24 liters of wine or spirits to an on-premises retailer, like a hotel or restaurant, each day. Former WAC 314-02-103(2); former WAC 314-02-106(1)(c).

Following the adoption of these rules, the Association filed a petition for judicial review in superior court. The Association argued that the 10 percent license fee rules, sell-and-deliver rules, and 24-liter rules were invalid because they exceeded the Board's statutory rule-making authority and because the rules were arbitrary and capricious. The Distributors intervened to defend the Board's rules. The superior court determined that the 10 percent license fee rules and the sell-and-deliver rules were valid because they were made within the Board's broad regulatory

---

[6] WAC 314-23-020(2) states that "[s]pirits distributors must sell and deliver product from their licensed premises. Similarly, WAC 314-24-180(2) provides that "[w]ine distributors must sell and deliver product from their licensed premises."

[7] Former WAC 314-02-103(2) provides that "[n]o single sale to an on-premises liquor licensee may exceed twenty-four liters. Single sales to an on-premises licensee are limited to one per day." Former WAC 314-02-106(1)(c) states that the holder of a spirits retailer license may "[s]ell spirits . . . for resale at their licensed premises, although no single sale may exceed twenty-four liters, and single sales to an on-premises licensee are limited to one per day."

authority. However, the superior court determined that the 24-liter rules were invalid because they exceeded the Board's statutory rule-making authority. The Association appeals, and the Distributors cross-appeal.

## ANALYSIS

### I. LEGAL PRINCIPLES

Our review of a challenge to an agency rule is governed by the Washington Administrative Procedure Act (APA), chapter 34.05 RCW. *Ass'n of Wash. Spirits & Wine Distribs.*, 182 Wn.2d at 350. Under the APA, an agency rule may be invalidated only if it (1) violates constitutional provisions, (2) exceeds the agency's statutory rule-making authority, (3) was adopted without complying with statutory rule-making procedures, or (4) is arbitrary and capricious. RCW 34.05.570(2)(c). The validity of an agency rule is a question of law we review de novo. *Kabbae v. Dep't of Soc. & Health Servs.*, 144 Wn. App. 432, 439, 192 P.3d 903 (2008).

### II. THE 10 PERCENT LICENSE FEE RULES

The Association argues that the Board exceeded its statutory rule-making authority by adopting the 10 percent license fee rules because Title 66 does not provide for a 10 percent license fee on distillers. We hold that the Board exceeded its statutory rule-making authority in adopting the 10 percent license fee rules, and therefore, the rules are invalid.[8]

---

[8] Because we hold that that the 10 percent license fee rules are invalid because the Board exceeded its statutory rule-making authority, we do not address the Association's arguments that the 10 percent license fee rules are also invalid because the Board's justification for the rules was invalid and because the rules are arbitrary and capricious.

"Administrative agencies have only those powers expressly granted by statute or are necessarily implied from the legislature's statutory delegation of authority." *Lenander v. Dep't of Ret. Sys.*, 186 Wn.2d 393, 404, 377 P.3d 199 (2016). When an agency rule is reasonably consistent with the statutes the rule implements, an agency acts within its statutory rule-making authority, and the rule is presumed to be valid. *Wash. State Hosp. Ass'n v. Dep't of Health*, 183 Wn.2d 590, 595, 353 P.3d 1285 (2015). However, an agency cannot promulgate rules that amend or change legislative enactments. 183 Wn.2d at 595. Rules that are inconsistent with the statutes they implement are beyond the agency's authority and are therefore invalid. 183 Wn.2d at 595.

"When the people approve an initiative measure, they exercise the same power of sovereignty as the Legislature does when it enacts a statute." *McGowan v. State*, 148 Wn.2d 278, 288, 60 P.3d 67 (2002). Accordingly, we interpret an initiative according to the rules of statutory interpretation. 148 Wn.2d at 288. Our primary goal is to determine the collective intent of the people who enacted the initiative measure. 148 Wn.2d at 288. We discern "intent from the plain language enacted by the [people], considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." *Ass'n of Wash. Spirits & Wine Distribs.*, 182 Wn.2d at 350. We do not add words to a statute. *Birgen v. Dep't of Labor & Indus.*, 186 Wn. App. 851, 858, 347 P.3d 503, *review denied*, 184 Wn.2d 1012 (2015).

If a statute is unambiguous, we apply the statute's plain language as an expression of legislative intent and do not consider other sources of such intent. 186 Wn. App. at 857-58.

However, if a statute is subject to multiple reasonable interpretations, the statute is ambiguous. 186 Wn. App. at 858.

Title 66 creates licenses permitting the distribution of spirits and establishes the fees associated with each license. *Ass'n of Wash. Spirits & Wine Distribs.*, 182 Wn.2d at 347. Additionally, the Board has the power to make regulations that extend to "[p]rescribing the fees payable in respect of permits and licenses issued under [Title 66] for which no fees are prescribed in [Title 66], and prescribing the fees for anything done or permitted to be done under the regulations." RCW 66.08.030(4).

As described above, under RCW 66.24.140,[9] Title 66 provides for a distiller's license. Under RCW 66.24.140(1), licensed in-state distillers are permitted to blend, rectify, and bottle spirits and generally must pay an annual licensing fee of $2,000. Under RCW 66.24.640,[10] a

---

[9] RCW 66.24.140 states:

> (1) There shall be a license to distillers, including blending, rectifying, and bottling; fee two thousand dollars per annum, unless provided otherwise . . .
> . . . .
> (2) Any distillery licensed under this section may:
> (a) Sell spirits of its own production for consumption off the premises. A distillery selling spirits under this subsection must comply with the applicable laws and rules relating to retailers;
> (b) Contract distilled spirits for, and sell contract distilled spirits to, holders of distillers' or manufacturers' licenses . . .
> (c) Provide free or for a charge one-half ounce or less samples of spirits of its own production to persons on the premises of the distillery. . . .

[10] RCW 66.24.640 provides:

licensed distiller "may act as a retailer and/or distributor to retailers selling for consumption on or off the licensed premises of spirits of its own production." A licensed distiller "operating as a distributor and/or retailer under [RCW 66.24.640] must comply with the applicable laws and rules relating to distributors and/or retailers." RCW 66.24.640.

Title 66 also establishes a spirits certificate of approval. RCW 66.24.140, .640; *see also* RCW 66.28.290(2). A spirits certificate of approval permits an out-of-state distiller or importer to distribute its own spirits to Washington retailers. RCW 66.24.640. A spirits certificate of approval holder may also "act as a . . . distributor to retailers selling for consumption on or off the licensed premises of spirits of its own production." RCW 66.24.640. Because the 10 percent license fee rules treat distillers and spirits certificate of approval holders similarly, we refer to distillers and spirits certificate of approval holders collectively as "distillers."

Under Title 66, the Board has the power to make regulations prescribing the fees required for permits and licenses. RCW 66.08.030(4).[11] Under this provision, the Board adopted the 10 percent license fee rules, providing that distillers must pay a 10 percent fee on "their gross spirits

---

Any distiller licensed under [Title 66] may act as a retailer and/or distributor to retailers selling for consumption on or off the licensed premises of spirits of its own production, and any manufacturer, importer, or bottler of spirits holding a certificate of approval may act as a distributor of spirits it is entitled to import into the state under such certificate. The board must by rule provide for issuance of certificates of approval to spirits suppliers. An industry member operating as a distributor and/or retailer under this section must comply with the applicable laws and rules relating to distributors and/or retailers . . . .

[11] RCW 66.08.030(4) provides that the power of the board to make regulations under the APA extends to "[p]rescribing the fees payable in respect of permits and licenses issued under [Title 66] for which no fees are prescribed . . . and prescribing the fees for anything done or permitted to be done under the regulations."

revenue to the board on sales to a licensee . . . during the first two years of licensure and five percent of their gross spirits revenues to the board in year three and thereafter." WAC 314-28-070(3); *see* WAC 314-23-030(3)(b).

RCW 66.24.640 expressly provides that a distiller licensed under RCW 66.24.140 may act as a distributor under either its distiller's license or a certificate of approval. *Ass'n of Wash. Spirits & Wine Distribs.*, 182 Wn.2d at 357. Read together with RCW 66.24.140, a distiller that obtains a license at a rate of only $2,000 per year is permitted to distribute its own spirits under that license. RCW 66.24.640 does not require a licensed distiller to obtain a spirits distributor license or pay an additional licensing fee to distribute its own spirits. Because the people chose not to add additional fee or licensure requirements, we do not add them here. *See Birgen*, 186 Wn. App. at 858. RCW 66.24.140 and RCW 66.24.640 precisely define the scope of the distiller's license and the fees associated with that license. As a result, the statutes are unambiguous. *See W. Telepage*, *Inc. v. City of Tacoma Dep't of Fin.*, 140 Wn.2d 599, 609, 998 P.2d 884 (2000).

The Board argues that RCW 66.08.030(4) and RCW 66.24.640 authorize it to impose additional license fees. However, the Washington Supreme Court rejected this argument in *Ass'n of Washington Spirits and Wine Distributors v. Washington State Liquor Control Board*. 182 Wn.2d at 354. Moreover, the Board's argument is contrary to the statutory scheme of Title 66.

In *Ass'n of Washington Spirits and Wine Distributors*, the Distributors argued that the Board exceeded its statutory authority by requiring spirits distributors to pay at least $150

million in licensing fees (the "$150 million shortfall fee") but not requiring distillers distributing their own spirits to pay the fee. 182 Wn.2d at 353-54. The Distributors argued that RCW 66.28.030(4) and RCW 66.24.640 required distillers to comply with statutes and regulations relating to distributors and, therefore, required that distillers pay the $150 million shortfall fee. 182 Wn.2d at 354.

The Washington Supreme Court held that the general statutory provisions in RCW 66.08.030(4) and RCW 66.24.640 did not authorize the Board to require that distillers pay the $150 million shortfall fee because it was not specifically provided for in Title 66. 182 Wn.2d at 356. The Washington Supreme Court reasoned that Title 66 specifically provided that only spirits distributors, and not distillers, must pay the additional fee. 182 Wn.2d at 357. Because Title 66 specifically provided for the licensing fees that apply only to spirits distributors, that specific provision prevailed over the general provision stating that the Board may impose additional license fees. 182 Wn.2d at 357. As a result, the Washington Supreme Court concluded that the additional fee did not apply to distillers. 182 Wn.2d at 357-58.

Here, RCW 66.24.140 specifically provides the scope and fees associated with a distiller's license. While the Board has the general authority to "[p]rescrib[e] the fees payable in respect of permits and licenses issued under [Title 66] for which no fees are prescribed in [Title 66]," the specific license fee provision in RCW 66.24.140 prevails over this general provision. RCW 66.08.030(4). Moreover, although RCW 66.08.030(4) permits the Board to require a fee where no fee is prescribed in Title 66, RCW 66.24.140 imposes a $2,000 license fee for

distillers, and it does not require any additional licensing fees. RCW 66.24.140(1). As a result, the Board is not authorized to impose an additional fee on licensed distillers.

The 10 percent license fee rules provide that distillers distributing their own spirits must pay 10 percent of their gross spirits revenue. As discussed above, the plain language of RCW 66.24.640 states that a distiller may distribute its own spirits pursuant to its RCW 66.24.140 distiller's license. RCW 66.24.140 imposes only one fee for licensed distillers. Because the 10 percent license fee rules are inconsistent with their implementing statutes, the Board exceeded its statutory rule-making authority in adopting the rules. Therefore, the 10 percent license fee rules are invalid.

III.  THE SELL-AND-DELIVER RULES

The Association next argues that the sell-and-deliver rules are invalid because they are arbitrary and capricious because the Board has not provided any explanation or justification for the rules. We disagree and hold that the Association fails to meet its burden in showing that the sell-and-deliver rules are arbitrary and capricious.

An agency rule is arbitrary and capricious if it is willful, unreasoned, and taken without regard to the attending facts and circumstances. *Ass'n of Wash. Spirits & Wine Distribs.*, 182 Wn.2d at 358. The party challenging an agency rule has the burden of demonstrating that the rule is arbitrary and capricious. *Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n*, 148 Wn.2d 887, 903, 64 P.3d 606 (2003).

Title 66 provides that the Board's goal in promulgating its rules is to protect the public interest, advance public safety, and promote the efficient collection of taxes. RCW 66.28.280. To give effect to these goals, the Board is given the power to fashion rules that regulate the sale of liquor. RCW 66.08.030(6). The sell-and-deliver rules provide that wine and spirits distributors "must sell and deliver product from their licensed premises." WAC 314-23-020(2); WAC 314-24-180(2). As a result, wine and spirits distributors may not sell and deliver their products without first storing their products in its licensed premises within the state. *See* WAC 314-23-020(2); *see also* WAC 314-24-180(2).

In adopting the sell-and-deliver rules, the Board prepared a concise explanatory statement (CES) that addressed the comments it received after providing notice of its intent to adopt the rules. The Board noted that because it had the broad power to regulate and control the sale of liquor, it clearly had the authority to regulate where liquor must be stored before delivery. Later, the Board reasoned that the sell-and-deliver rules were necessary to promote the Board's goal in efficiently collecting taxes because they enabled the Board to track liquor that was distributed within the state and to ensure that distributors did not circumvent the collection of taxes by failing to store liquor in their in-state licensed premises.

The Association cites *Puget Sound Harvesters Ass'n v. Dep't of Fish and Wildlife*, 157 Wn. App. 935, 239 P.3d 1140 (2010), to support its proposition that an agency rule is arbitrary and capricious when the agency does not provide an explanation for the rule. But *Puget Sound Harvesters Ass'n* does not stand for this proposition. In *Puget Sound Harvesters Ass'n*, we determined that a Department of Fish and Wildlife rule was arbitrary and capricious because the

13

Board adopted the rule without considering its effect on the agency's stated goals. 157 Wn. App. at 950-51. In promulgating a rule that calculated harvesting opportunity, the Department disregarded evidence that was vital in promoting the Department's goal of maintaining the economic wellbeing of the fishing industry, and it did not provide a rational basis for the discrepancy. 157 Wn. App. at 949-51. Accordingly, the Department's rule was taken without regard to attending facts and circumstances. 157 Wn. App. at 949.

Here, the Association does not argue that the Board did not consider attending facts and circumstances, such as evidence pertinent to the Board's goal of regulating liquor within the state. Instead, the Association suggests that there is no justification or reasoning for the sell-and-deliver rules in the administrative record. The Board's CES for the sell-and-deliver rules and the administrative record reveal that the Board justified adopting the rules to give effect to its stated goal in promoting the efficient collection of taxes and to utilize its broad authority to regulate the sale of liquor. The Association does not address these justifications and does not show that the Board disregarded attending facts and circumstances in adopting the sell-and-deliver rules. Therefore, the Association failed to meet its burden in showing that the sell-and-deliver rules are invalid.

## IV. CROSS-APPEAL—THE 24-LITER RULES

On cross-appeal, the Distributors argue that the superior court erred in determining that the Board exceeded its statutory rule-making authority by adopting the 24-liter rules.[12] The

---

[12] The Association argues that this issue is moot because the Board recently amended the language of the 24-liter rules and the rules no longer contain the "one per day" language at issue

Association argues that the Distributors are not an aggrieved party under RAP 3.1. We consider this issue on the merits and hold that the 24-liter rules are invalid.

A.    *Aggrieved Party*

As an initial matter, the Association argues that we should dismiss the Distributors' cross-appeal because an intervenor is not an aggrieved party under RAP 3.1 when an agency does not defend its own rules. We disagree.

Under RAP 3.1, only an "aggrieved party" may seek appellate review. "An aggrieved party is one whose proprietary, pecuniary, or personal rights are substantially affected." *Aguirre v. AT&T Wireless Servs.*, 109 Wn. App. 80, 85, 33 P.3d 1110 (2001). Parties to an action are aggrieved parties under RAP 3.1. *See* 109 Wn. App. at 85. Intervenors are parties to an underlying action. *See State v. Mendez*, 157 Wn. App. 565, 577, 238 P.3d 517 (2010).

The Distributors filed a motion to intervene in this action, and the superior court granted it. Because the Distributors were an intervening party to the underlying action, they are an "aggrieved party" for purposes of RAP 3.1. Therefore, the Distributors may seek appellate review of the superior court's order.[13]

---

in the Distributors' cross-appeal. The Distributors argue that the issue is not moot because they would be precluded from making this argument in the future under the doctrine of res judicata. We address the Distributors' argument in the interests of justice.

[13] The Association cites *Terrill v. City of Tacoma*, 195 Wash. 275, 80 P.2d 858 (1938), in arguing that the Distributors are not an aggrieved party for purposes of RAP 3.1. However, *Terrill* is distinguishable. In *Terrill*, the Washington Supreme Court determined that an intervenor did not have standing to appeal because she did not have an interest in the subject matter of the suit. 195 Wash. at 276-77. *Terrill* did not address whether an intervenor is an "aggrieved party."

B.      *The Board's Statutory Rule-Making Authority*

On cross-appeal, the Distributors argue that the superior court erred in determining that the Board exceeded its statutory rule-making authority by imposing the 24-liter rules, promulgated under former WAC 314-02-103(2) and former WAC 314-02-106(1). We agree.

In determining whether the Board had the authority to impose the 24-liter rules, we must review the implementing statutes. *See Wash. Fed'n of State Emps. v. State Pers. Bd.*, 54 Wn. App. 305, 309, 773 P.2d 421 (1989). Accordingly, we must interpret the meaning of those statutes. *See* 54 Wn. App. at 309. We interpret an initiative according to the rules of statutory interpretation. *McGowan*, 148 Wn.2d at 288. "We recognize that the legislature intends to use the words it uses and intends *not* to use words it does not use." *State v. Nelson*, 195 Wn. App. 261, 266, 381 P.3d 84 (2016).

RCW 66.24.630(1) provides for a spirits retail license and states that "no single sale may exceed twenty-four liters."[14] RCW 66.24.360(2) provides a wine retailer reseller endorsement of a grocery store's license to sell wine to retailers and similarly states, "no single sale may exceed twenty-four liters."[15]

---

[14] RCW 66.24.630(1) provides that

> [t]here is a spirits retail license to: Sell spirits in original containers to consumers for consumption off the licensed premises and to permit holders; sell spirits in original containers to retailers licensed to sell spirits for consumption on the premises, for resale at their licensed premises according to the terms of their licenses, although no single sale may exceed twenty-four liters.

[15] RCW 66.24.360(2) states:

The 24-liter rules were adopted to implement RCW 66.24.630(1) and RCW 66.24.360(2). Former WAC 314-02-106(1); former WAC 314-02-103(2). The 24-liter rules provide that a licensee may sell wine or spirits to an on-premises retailer "although no single sale may exceed twenty-four liters, *and single sales to an on-premises licensee are limited to one per day*." Former WAC 314-02-106(1)(c) (emphasis added); *see also* former WAC 314-02-103(2).

RCW 66.24.630(1) and RCW 66.24.360(2) clearly provide that no single sale of a spirit retailer or wine retailer reseller endorsement can exceed 24 liters. The statutes do not include a daily limit on the number of single sales that can be made. We recognize that the people do not intend to use the words they do not use. *See Nelson*, 195 Wn. App. at 266. Therefore, the plain language of RCW 66.24.630(1) and RCW 66.24.360(2) shows that the people intended to impose only a "single sale" limit on the retail-to-retail sale of wine and spirits and not a daily limit on single sales.

The Distributors argue that RCW 66.24.630(1) and RCW 66.24.360(2) are ambiguous because the term "sale" could refer to multiple transactions over any period of time. "Sale" is defined as the "distribution (as of goods or services) by selling." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2003 (2002). While a "sale" can also be considered a deal or transaction, the term "sale" is not modified or quantified. It is clear from the language of RCW 66.24.630(1) and RCW 66.24.360(2) that no single sale can exceed 24-liters. That RCW

There is a wine retailer reseller endorsement of a grocery store license, to sell wine at retail in original containers to retailers licensed to sell wine for consumption on the premises, for resale at their licensed premises according to the terms of the license. However, no single sale may exceed twenty-four liters.

66.24.630(1) and RCW 66.24.360(2) do not state the time frame in which a single sale can occur does not render the use of "sale" ambiguous. While the statutes may be subject to multiple interpretations, it is unreasonable to read a daily limit into a statute where no such limit is provided for or alluded to. Because the 24-liter rules are inconsistent with RCW 66.24.630(1) and RCW 66.24.360(2), the Board exceeded its statutory rule-making authority by adopting the rules. Therefore, the 24-liter rules are invalid.

## CONCLUSION

We hold that the 10 percent license fee rules are invalid, but we otherwise affirm the superior court's order.

_____
Worswick, J.

We concur:

_____
Johanson, J.

_____
Bjorgen, C.J.

18