# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| WASHINGTON RESTAURANT ASSOCIATION, a Washington non-profit organization; NORTHWEST GROCERY ASSOCIATION, a non-profit organization; COSTCO WHOLESALE CORPORATION, a Washington corporation; and WASHINGTON LODGING ASSOCIATION, a Washington non-profit organization, <br><br> Appellants, <br><br> v. <br><br> WASHINGTON STATE LIQUOR AND CANNABIS BOARD, a state agency, <br><br> Respondent. | DIVISION ONE <br><br> No. 79644-5-I <br><br> PUBLISHED OPINION <br><br><br><br><br><br> FILED: August 26, 2019 |

DWYER, J. — Following the enactment of Initiative 1183[1] (I-1183), best known for ending the state monopoly on the sale of spirits, the Washington State Liquor and Cannabis Board (the Board) promulgated new rules, set forth in WAC 314-23-060 through WAC 314-23-085, pertaining to the pricing of wine and spirits. Displeased with these rules and believing them to be directly contrary to RCW 66.28.170, which, as amended by I-1183, permits certain price differentials in the sale of wine and spirits, the Washington Restaurant Association, the Northwest Grocery Association, Costco Wholesale Corporation, and the Washington Lodging Association (collectively Costco) sought judicial review of

---

[1] LAWS OF 2012, ch.2.

WAC 314-23-065 through WAC 314-23-085. The superior court rejected Costco's challenge to the new rules.

Costco appeals, asserting that the Board exceeded its authority by promulgating rules contrary to RCW 66.28.170 and that the rules are arbitrary and capricious. We conclude that the Board exceeded its authority when it promulgated WAC 314-23-065, WAC 314-23-080, and WAC 314-23-085 because these rules expressly prohibit pricing differentials in the sale of wine and spirits that are authorized by RCW 66.28.170. However, Costco does not establish the invalidity of WAC 314-23-070 and WAC 314-23-075. Accordingly, we affirm in part and reverse in part.

I

I-1183 "dramatically changed the State's approach to regulating the distribution and sale of liquor in Washington." Wash. Ass'n for Substance Abuse & Violence Prevention v. State, 174 Wn.2d 642, 649, 278 P.3d 632 (2012). I-1183 removed the government from the business of distributing and selling liquor, redirecting the State's focus to "the more appropriate government role of enforcing liquor laws and protecting public health and safety concerning all alcoholic beverages." LAWS OF 2012, ch. 2, § 101(2)(b). I-1183 also modified RCW 66.28.170[2] by legalizing "[p]rice differentials for sales of spirits or wine

---

[2] RCW 66.28.170 provides in full:
It is unlawful for a manufacturer of spirits, wine, or malt beverages holding a certificate of approval or the manufacturer's authorized representative, a distillery, brewery, or a domestic winery to discriminate in price in selling to any purchaser for resale in the state of Washington. Price differentials for sales of spirits or wine based upon competitive conditions, costs of servicing a purchaser's account, efficiencies in handling goods, or other bona fide business factors, to the extent the differentials are not unlawful under trade regulation laws applicable to goods of all kinds, do not violate this section.

2

based upon competitive conditions, costs of servicing a purchaser's account, efficiencies in handling goods, or other bona fide business factors, to the extent the differentials are not unlawful under trade regulation laws applicable to goods of all kinds."[3] LAWS OF 2012, ch. 2, § 119; see also RCW 66.28.170; former RCW 66.28.170 (LAWS OF 2004, ch. 160, § 17).

Following the passage of I-1183, the Board received a petition for rule making from the Washington Liquor Store Association seeking clarification as to which price differentials were authorized by RCW 66.28.170. The Board informed stakeholders of its intent to promulgate rules to clarify which price differentials were permissible under RCW 66.28.170 and invited comment. Following an extensive rule-making process involving numerous proposed draft rules and seven hearings held over the course of three years, the Board filed a Concise Explanatory Statement[4] (CES) and adopted a final version of the new pricing rules, set forth in WAC 314-23-060 through WAC 314-23-085. However, the day before the rules went into effect, the Board stayed the enforcement of the last sentence of WAC 314-23-085 and then removed it.[5] WSR 16-19-105. The remaining rules went into effect on October 22, 2015.

---

[3] I-1183 notably did not make changes to the laws governing pricing practices for the sale of beer.

[4] In the CES, the Board asserted that it had the authority to promulgate the pricing rules pursuant to RCW 66.08.030(12), which grants the board the power to make regulations pertaining to "[p]rescribing the conditions, accommodations, and qualifications requisite for the obtaining of licenses to sell beer, wines, and spirits, and regulating the sale of beer, wines, and spirits thereunder."

[5] That sentence read: "The delivery of product to multiple sites cannot be used in determining the volume discount for a combined order unless the order is delivered to multiple liquor licensed locations owned and operated by the same liquor licensed entity." WSR 16-19-105 (strikeout omitted).

Meanwhile, unsatisfied with the new rules, Costco filed a petition for judicial review in Thurston County Superior Court, requesting that the court declare WAC 314-23-065,[6] WAC 314-23-070,[7] WAC 314-23-075,[8] WAC 314-23-

---

[6] WAC 314-23-065 provides that:
(1) "Unfair trade practice" means one retailer or industry member directly or indirectly influencing the purchasing, marketing, or sales decisions of another retailer or industry member by any agreement written or unwritten or any other business practices or arrangements such as, but not limited to, the following:
(a) Any form of coercion between industry members and retailers or between retailers and industry members through acts or threats of physical or economic harm, including threat of loss of supply or threat of curtailment of purchase;
(b) A retailer on an involuntary basis purchasing less than it would have of another industry member's product;
(c) Purchases made by a retailer or industry member as a prerequisite for purchase of other items;
(d) A retailer purchasing a specific or minimum quantity or type of a product or products from an industry member;
(e) An industry member requiring a retailer to take and dispose of a certain product type or quota of the industry member's products;
(f) A retailer having a continuing obligation to purchase or otherwise promote or display an industry member's product;
(g) An industry member having a continuing obligation to sell a product to a retailer;
(h) A retailer having a commitment not to terminate its relationship with an industry member with respect to purchase of the industry member's products or an industry member having a commitment not to terminate its relationship with a retailer with respect to the sale of a particular product or products;
(i) An industry member being involved in the day-to-day operations of a retailer or a retailer being involved in the day-to-day operations of an industry member in a manner that violates the provisions of this subsection;
(j) Discriminatory pricing practices as prohibited by law or other practices that are discriminatory in that the product is not offered to all retailers in the local market at the same price.
(2) The exercise of undue influence is an unfair trade practice and is prohibited.
[7] WAC 314-23-070 provides that:
Local market is limited to businesses in geographic recognized market areas such as town, city, county or other recognized geographic area in which distribution services are provided. For the purposes of differential pricing, sales to on-premises retailers and off-premises retailers constitute separate markets.
[8] WAC 314-23-075 provides that:
(1) It is unlawful for a distributor or other supplier of spirits or wine to offer a lower price to an on-premises or off-premises retailer if the retailer is required to purchase a specific portion of some or all of its wine or spirits from that distributor or supplier in order to qualify for the lower price. Such requirements include, but are not necessarily limited to, agreeing to devote certain percentage of the spirits back-bar, well-drinks, wine by the glass, or any combination of these or other types of purchases to products sold by that distributor or supplier.

080,[9] and WAC 314-23-085[10] invalid.[11] Costco made the following assertions pertinent to this appeal: (1) that the new pricing rules conflicted with RCW 66.28.170, (2) that the Board had exceeded its authority in promulgating the pricing rules, and (3) that the rules were arbitrary and capricious. The superior court rejected Costco's arguments, concluding that the pricing rules did not conflict with RCW 66.28.170, that the Board did not exceed its authority by promulgating the rules, and that the rules are not arbitrary and capricious. Costco appealed to Division Two, which transferred the matter to us for decision.

---

(2) Such exclusive discounts are prohibited under RCW 66.28.170 and federal law 27 C.F.R. 6.72.

[9] WAC 314-23-080 provides that:

(1) Yes, distributors or other licensed suppliers are allowed to provide volume discounts to licensed on-premises and off-premises retailers. The discounts must be based solely on the volume of the spirits and/or wine that is purchased by a retailer from a distributor or other licensed suppliers. However, the limitations on interactions between the levels of licenses remain, including the prohibition on undue influence and sales below cost of acquisition.

(2) Differential pricing between on-premises licensed retailers and off-premises licensed retailers is allowed under the following exceptions:

(a) For spirits: A new product to the market may be sold to on-premises retailers at an "introductory price" for a maximum of six months. After the six-month introductory period the price for on-premises and off-premises retailers must be the same price for the same volume purchased.

(i) "New product" means the product has not previously been offered for sale to retailers.

(ii) "Introductory price" means the price of the spirits product when it first becomes available for purchase.

(b) For wine: Wine may be sold to on-premises retailers and off-premises retailers at different prices.

[10] WAC 314-23-085 provides that:

The following types of discounts are not allowed. Please note that this list is representative and not inclusive of all practices that are not allowed:

(1) **Volume discounts that violate local, state, or federal laws.**

(2) **Discounts on purchases over time.** Prices must be based on the spirits or wine delivered in a single shipment.

(3) **Discounts on a combined order that is delivered to multiple licensed sites.** Volume discounts may only be provided based on combined orders by one or more licensees to the "central warehouse" or a single location to which the order is delivered.

[11] Although Costco's petition for review asserted that it challenged all of the new pricing rules adopted by the Board, it did not specifically allege that WAC 314-23-060 was invalid. On appeal, Costco does not assert that WAC 314-23-060 is invalid.

II

Costco's primary contention on appeal is that the challenged rules conflict with RCW 66.28.170 and therefore exceed the scope of the agency's rule-making authority. Specifically, Costco asserts that RCW 66.28.170 is unambiguous, that the challenged rules prohibit pricing practices expressly authorized by the statute, and that the Board therefore lacks the authority to promulgate the challenged rules. In response, the Board asserts that it has the authority to interpret RCW 66.28.170 because it is ambiguous, that the rules do not conflict with the statute, and that it has the authority to promulgate the challenged pricing rules as part of its broad authority to regulate the sale of liquor and wine. Costco's contention presents the following issues: (1) whether the Board retains any authority after the enactment of I-1183 to promulgate rules relating to the pricing of wine and spirits, (2) whether RCW 66.28.170 is ambiguous, and (3) whether the challenged pricing rules conflict with RCW 66.28.170.

A

The Washington Administrative Procedure Act (APA)[12] governs the applicable standard of review of a challenge to an agency rule. Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd., 182 Wn.2d 342, 350, 340 P.3d 849 (2015). We review the validity of an agency rule de novo. Wash. State Hosp. Ass'n v. Dep't of Health, 183 Wn.2d 590, 595, 353 P.3d 1285 (2015).

Agency rules are presumed valid. St. Francis Extended Health Care v.

---

[12] Ch. 34.05 RCW.

Dep't of Soc. & Health Servs., 115 Wn.2d 690, 702, 801 P.2d 212 (1990). "The burden of overcoming this presumption rests on the challenger, and judicial review will be limited to a determination of whether the regulation in question is reasonably consistent with the statute being implemented." St. Francis, 115 Wn.2d at 702.

An agency rule is invalid only if it "(1) violates constitutional provisions, (2) exceeds the agency's statutory rule-making authority, (3) is arbitrary and capricious in that it could not have been the product of a rational decision-maker, or (4) was adopted without complying with statutory rule-making procedures." Ass'n of Wash. Spirits, 182 Wn.2d at 350 (citing RCW 34.05.570(2)(c)). The extent of an agency's rule-making authority is a question of law reviewed de novo. Ass'n of Wash. Spirits, 182 Wn.2d at 350.

Agencies lack the authority to "'amend or change legislative enactments.'" Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 19, 43 P.3d 4 (2002) (quoting Dep't of Ecology v. Theodoratus, 135 Wn.2d 582, 600, 957 P.2d 1241 (1998)). Thus, "rules that are inconsistent with the statutes they implement are invalid." Bostain v. Food Express, Inc., 159 Wn.2d 700, 715, 153 P.3d 846 (2007). "A rule that conflicts with a statute is beyond an agency's authority. Invalidation of the rule is the proper remedy." Devine v. Dep't of Licensing, 126 Wn. App. 941, 956, 110 P.3d 237 (2005) (citing H & H P'ship v. Dep't of Ecology, 115 Wn. App. 164, 170, 62 P.3d 510 (2003)).

B

We first consider whether the Board has the authority to promulgate *any* rules relating to the pricing of wine and spirits. Costco asserts that I-1183 stripped the Board of its power to regulate the price of wine and spirits because it removed the Board's general grant of authority to regulate the liquor market that had been set forth in former RCW 66.08.030.[13] Absent that general authority, Costco asserts, the Board is left with only the specific grants of authority set forth in RCW 66.08.030, which do not include an explicit grant of authority to regulate the price of wine and spirits. In response, the Board asserts that it retains broad authority to regulate the price of wine and spirits as part of its authority pursuant to RCW 66.08.030(12), which states that the Board may enact rules "[p]rescribing the conditions, accommodations, and qualifications requisite for the obtaining of licenses to sell beer, wines, and spirits, and regulating the sale of beer, wines, and spirits thereunder," and RCW 66.28.320, which states that the Board may enact rules "necessary to carry out the purposes and provisions of" chapter 66.28 RCW. The Board has the better argument.

It is well settled that an agency has "no inherent powers, but only such as have been expressly granted to it by the legislature or have, by implication, been conferred upon it as necessarily incident to the exercise of those powers expressly granted." State ex rel. Pub. Util. Dist. No. 1 of Okanogan County v.

---

[13] I-1183 struck the following language from RCW 66.08.030:
For the purpose of carrying into effect the provisions of this title according to their true intent or of supplying any deficiency therein, the board may make such regulations not inconsistent with the spirit of this title as are deemed necessary or advisable.
I-1183, § 204 (strikeout omitted).

8

Dep't of Pub. Serv., 21 Wn.2d 201, 209, 150 P.2d 709 (1944) (citing Wishkah Boom Co. v. Greenwood Timber Co., 88 Wash. 568, 153 P. 367 (1915)).

Prior to the passage of I-1183, RCW 66.28.320 authorized the Board to adopt any rules necessary to carry out the purposes of all of the provisions of chapter 66.28 RCW. LAWS OF 2009, ch. 506, § 9. This authority was not eliminated by I-1183 and is therefore retained by the Board. See Pub. Util. Dist. No. 2 of Pac. County v. Comcast of Wash. IV, Inc., 184 Wn. App. 24, 60, 336 P.3d 65 (2014) ("Each PUD commission retains its preexisting discretion with regard to rate-setting *except* as that discretion is restricted by the amended statute."). RCW 66.28.170 clearly addresses whether certain pricing practices are permissible.[14] The Board is authorized to enact rules necessary to carry out the provisions of that statute.[15]

## C

We next analyze RCW 66.28.170 to determine if the statute is ambiguous. Again, this statute provides:

> It is unlawful for a manufacturer of spirits, wine, or malt beverages holding a certificate of approval or the manufacturer's authorized representative, a distillery, brewery, or a domestic winery to discriminate in price in selling to any purchaser for resale in the state of Washington. Price differentials for sales of spirits or wine based upon competitive conditions, costs of

---

[14] Costco asserts that we must disregard RCW 66.28.320 and its grant of authority to the Board to promulgate the challenged rules because the Board did not assert that it was relying on authority granted by RCW 66.28.320 at the time it promulgated the rules. But Costco cites no authority to support its assertion. Costco has the burden of establishing that the rules are invalid, and cannot rely upon the Board's alleged failure to properly identify which statute supports its exercise of regulatory authority when it is clear that such exercise of authority was supported by statute. See State v. Quismundo, 164 Wn.2d 499, 505-06, 192 P.3d 342 (2008) (a court's "obligation to follow the law remains the same regardless of the arguments raised by the parties before it").

[15] That I-1183 left intact the Board's authority to promulgate rules pertaining to the pricing of wine and spirits does not mean that the Board retains the same discretion regarding the content of rules as it possessed before the passage of the initiative.

9

servicing a purchaser's account, efficiencies in handling goods, or other bona fide business factors, to the extent the differentials are not unlawful under trade regulation laws applicable to goods of all kinds, do not violate this section.

RCW 66.28.170.

Costco asserts that the meaning of RCW 66.28.170 is clear: any price differential in the sale of wine or spirits based on the business factors listed in the statute, or any other bona fide business factor, is lawful provided that such differential does not violate any trade regulation law generally applicable to all kinds of goods. The Board, in response, insists that Costco's interpretation must be mistaken because it would conflict with other statutory provisions of chapter 66.28 RCW. Furthermore, the Board contends that RCW 66.28.170 is therefore ambiguous, requiring interpretation to avoid conflicting with other provisions of chapter 66.28 RCW. We disagree.

1

"The basic rules of statutory construction applicable to legislative enactments also apply to direct legislation by the people in the form of an initiative." Seeber v. Wash. State Pub. Disclosure Comm'n, 96 Wn.2d 135, 139, 634 P.2d 303 (1981) (citing State ex rel. Pub. Disclosure Comm'n v. Rains, 87 Wn.2d 626, 633 n.5, 555 P.2d 1368 (1976)). "The meaning of a statute is a question of law reviewed de novo." Campbell & Gwinn, 146 Wn.2d at 9 (citing State v. Breazeale, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001); State v. J.M., 144 Wn.2d 472, 480, 28 P.3d 720 (2001)).

When interpreting a statute, our "objective is to ascertain and carry out the Legislature's intent." Campbell & Gwinn, 146 Wn.2d at 9 (citing J.M., 144 Wn.2d

at 480). "If a statute's meaning is plain on its face, we must 'give effect to that plain meaning as an expression of legislative intent.'" Broughton Lumber Co. v. BNSF Ry., 174 Wn.2d 619, 627, 278 P.3d 173 (2012) (quoting Campbell & Gwinn, 146 Wn.2d at 9-10). "To determine the plain meaning, we look to the text of the statute, as well as 'the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" State v. Donaghe, 172 Wn.2d 253, 262, 256 P.3d 1171 (2011) (citing State v. Jacobs, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)). A statute is ambiguous if it has at least two reasonable interpretations, but is not ambiguous merely because different interpretations are conceivable. Cerrillo v. Esparza, 158 Wn.2d 194, 201, 142 P.3d 155 (2006) (quoting Agrilink Foods, Inc. v. Dep't of Revenue, 153 Wn.2d 392, 396, 103 P.3d 1226 (2005)). When possible, a statute must be read together with related statutes to produce a "'harmonious total statutory scheme . . . which maintains the integrity of the respective statutes.'" Dep't of Revenue v. Fed. Deposit Ins. Corp., 190 Wn. App. 150, 157-58, 359 P.3d 913 (2015) (alteration in original) (internal quotation marks omitted) (quoting Employco Pers. Servs., Inc. v. City of Seattle, 117 Wn.2d 606, 614, 817 P.2d 1373 (1991)).

We show no deference to an agency's interpretation of an unambiguous statute. Ass'n of Wash. Spirits, 182 Wn.2d at 355. Similarly, we do not "'defer to an agency the power to determine the scope of its own authority'" under a statute. Ma'ae v. Dep't of Labor & Indus., 8 Wn. App. 2d 189, 197, 438 P.3d 148 (2019) (internal quotation marks omitted) (citing Wash. Fed'n of State Emps. v. Dep't of Gen. Admin., 152 Wn. App. 368, 377-78, 216 P.3d 1061 (2009)).

2

Costco asserts that the plain meaning of RCW 66.28.170 is clear: all price differentials in the sale of wine or spirits are lawful if they do not violate trade regulations applicable to all kinds of goods and are premised on the listed business factors in the statute or on any other bona fide business factor. In response, the Board does not offer an alternative interpretation but, rather, insists that Costco's interpretation must be mistaken because it conflicts with several other statutory provisions of chapter 66.28 RCW. Costco has the better argument.

RCW 66.28.170 prohibits price discrimination, but allows certain price differentials, stating:

> It is unlawful for a manufacturer of spirits, wine, or malt beverages holding a certificate of approval or the manufacturer's authorized representative, a distillery, brewery, or a domestic winery to discriminate in price in selling to any purchaser for resale in the state of Washington. Price differentials for sales of spirits or wine based upon competitive conditions, costs of servicing a purchaser's account, efficiencies in handling goods, or other bona fide business factors, to the extent the differentials are not unlawful under trade regulation laws applicable to goods of all kinds, do not violate this section.

This section could not be clearer that it permits price differentials for wine and spirits premised on competitive conditions, costs of servicing a purchaser's account, efficiencies in handling goods, or any other bona fide business factor provided that such differentials do not violate trade regulations applicable to all kinds of goods.[16]

---

[16] The parties do not appear to agree on that which constitutes a "bona fide business factor." Because no party provides a clear definition or cogent supporting argument in their briefing to resolve this question, and because we need not determine the exact contours of a

This reading of the statute is further supported by consideration of the entire statutory scheme. First, we note that I-1183 directly states in its first section that its purpose is to eliminate then-existing restrictions on the distribution and pricing of wine and spirits.

> The people of the state of Washington, in enacting this initiative measure, find that the state government monopoly on liquor distribution and liquor stores in Washington and *the state government regulations that arbitrarily restrict the wholesale distribution and pricing of wine* are outdated, inefficient, and costly to local taxpayers, consumers, distributors, and retailers. Therefore, the people wish to privatize and modernize *both wholesale distribution and retail sales of liquor and remove outdated restrictions on the wholesale distribution of wine* by enacting this initiative.

I-1183, § 101(1) (emphasis added).[17]

Second, I-1183 also revised RCW 66.28.180, which had previously restricted discounts on the sale of wine. Former RCW 66.28.180 (LAWS OF 2009, ch. 506, § 10). I-1183 eliminated that section's prohibition of all quantity discounts for wine, although it left such a prohibition intact for beer. I-1183, § 121(1)(d). I-1183 further modified RCW 66.28.180 by adding a new subsection explicitly permitting the sale of wine at a discounted price if premised on grounds permissible under "applicable trade regulation laws," including "good faith

"bona fide business factor" to resolve the issues presented in this appeal, we leave to another day the determination of that which constitutes a "bona fide business factor."

[17] I-1183 also added spirits distributors to the ambit of RCW 19.126.010. See I-1183, § 212(1). Prior to the public's adoption of I-1183, chapter 19.126 RCW offered franchise protections to distributors of malt beverages. Former RCW 19.126.040 (LAWS OF 2009, ch. 155, § 3). As a part of these protections, the legislature recognized that it best served the public interest to assure "the wholesale distributor's freedom to manage the business enterprise, including the wholesale distributor's right to independently establish its selling prices." Former RCW 19.126.010(1)(a) (LAWS OF 2003, ch. 59, § 1). By adding spirits distributors to this section, the people, in approving I-1183, concluded that this language is consistent with their stated purpose of eliminating arbitrary restrictions on the distribution and pricing of spirits. In this way, I-1183's addition of spirits distributors to the ambit of RCW 19.126.010 supports our interpretation of RCW 66.28.170.

13

meeting of a competitor's lawful price and absence of harm to competition." I-1183, § 121(4). The initiative also used this same language to authorize similar discounts on the sale of spirits. I-1183, § 120(5). Reading I-1183 as a whole supports our conclusion that RCW 66.28.170 means what it says: price differentials premised on competitive conditions, costs of servicing a purchaser's account, efficiencies in handling goods, or other bona fide business factors are permissible provided that they do not conflict with trade laws applicable to all kinds of goods.

3

We now address the Board's contention that RCW 66.28.170 must be ambiguous because the plain meaning reading urged by Costco conflicts with other statutory provisions in our state's liquor laws. Specifically, the Board asserts that a plain meaning reading of RCW 66.28.170 conflicts with RCW 66.28.285(6)(j) and RCW 66.28.305. We are not persuaded.

The Board first asserts that Costco's plain meaning interpretation must be mistaken because it conflicts with the definition of price discrimination set forth in the definition of undue influence in RCW 66.28.285(6)(j).[18] The alleged conflict

---

[18] RCW 66.28.285 states, in pertinent part:
The definitions in this section apply throughout RCW 66.28.280 through 66.28.315 unless the context clearly requires otherwise.
. . . .
(6) "Undue influence" means one retailer or industry member directly or indirectly influencing the purchasing, marketing, or sales decisions of another retailer or industry member by any agreement written or unwritten or any other business practices or arrangements such as but not limited to the following:
. . . .
(j) Discriminatory pricing practices as prohibited by law or other practices that are discriminatory in that product is not offered to all retailers in the local market on the same terms.

with RCW 66.28.170 arises, according to the Board, because RCW 66.28.285(6)(j) defines undue influence, in part, as "[d]iscriminatory pricing practices as prohibited by law or *other practices that are discriminatory in that product is not offered to all retailers in the local market on the same terms.*" (Emphasis added.)  The Board asserts that RCW 66.28.170's prohibition against price discrimination means price discrimination as set forth in RCW 66.28.285(6)(j), and, accordingly, the prohibition of price discrimination in RCW 66.28.170 requires that products be offered to all retailers in the local market on the same terms.  The Board further asserts that this makes RCW 66.28.170 ambiguous because a plain meaning reading of the authorized price differentials set forth therein conflicts with the prohibition against price differentials within a local market.  We disagree.

The definition of discriminatory pricing set forth in RCW 66.28.285(6)(j) is explicitly restricted to "apply throughout RCW 66.28.280 through 66.28.315 unless the context clearly requires otherwise."[19]  RCW 66.28.285.  Because RCW 66.28.170 is not codified "throughout RCW 66.28.280 through 66.28.315," the subsection (j) definition plainly does not apply to RCW 66.28.170.

Nevertheless, the Board asserts that the language "unless the context clearly requires otherwise" must indicate that the definition of discriminatory pricing in RCW 66.28.285(6)(j) applies to RCW 66.28.170.  However, the Board offers no support for this contention.  Indeed, the context within which RCW

---

[19] RCW 66.28.280 through 66.28.315 set forth limitations on cross-tier ownership in the production, distribution, and retail sale (the three tiers) of alcohol and on the business practices of owners with an ownership stake in multiple tiers.  See RCW 66.28.280-.315.

15

66.28.170's prohibition of discrimination in pricing is placed—in the same code section that explicitly authorizes price differentials without regard to whether they result in different prices for retailers in the same local market—indicates that the definition of discriminatory pricing set forth in RCW 66.28.285(6)(j) is cabined solely to cross-tier ownership and is not intended to apply to the prohibition against price discrimination set forth in RCW 66.28.170. We conclude that the definition of discriminatory pricing set forth in RCW 66.28.285(6)(j) is not applicable to RCW 66.28.170. Therefore, no conflict arises between RCW 66.28.170's authorization of price differentials and RCW 66.28.285(6)(j)'s definition of price discrimination.[20]

The Board next asserts that RCW 66.28.170 must be ambiguous because it would otherwise conflict with RCW 66.28.305, which generally requires that "no industry member shall advance and no retailer shall receive moneys or moneys' worth under an agreement written or unwritten or by means of any other business practice or arrangement." Specifically, the Board asserts that Costco's interpretation of RCW 66.28.170 is incorrect because it would permit volume discounts based on purchases over a period of time and that such discounts violate RCW 66.28.305. This is so, the Board asserts, because all volume discounts over a period of time necessarily constitute an extension of credit by the seller to the buyer or a rebate of funds previously paid, both of which would

---

[20] Indeed, RCW 66.28.170 is clear that the price differentials it authorizes "do not violate this section." It says nothing about whether such price differentials are permissible under other sections of our state's liquor statutes. Thus, in matters involving cross-tier ownership, price differentials that are permissible under RCW 66.28.170 may sometimes be impermissible price discrimination under RCW 66.28.285(6)(j). This does not render RCW 66.28.170 ambiguous.

constitute moneys or moneys' worth. Again, we disagree.

The Board's argument fails because it relies on a flawed premise: that volume discounts over time necessarily require a seller to extend credit to a buyer or give the buyer a rebate.[21] For example, if a buyer enters into a contract to purchase an amount of wine to be delivered in shipments at various points throughout the term of the contract, it is not an extension of credit to base the price of the wine on the total amount to be sold so long as payments for each shipment are made prior to or upon delivery. Although it is theoretically possible for parties to enter into a contract such that the seller extends credit to the buyer or gives the buyer a rebate following the purchase of a certain amount of product, no such terms are required in every long term contract involving multiple deliveries of product over time.[22] The Board is wrong to assert that parties entering into long term contracts must necessarily be extending credit or receiving rebates upon the completion of the contract. A plain meaning reading of RCW 66.28.170 does not conflict with RCW 66.28.305.

D

We now turn to the Board's pricing rules as set forth in WAC 314-23-065 through WAC 314-23-085. Costco asserts that these rules conflict with the plain meaning of RCW 66.28.170 and are therefore invalid overreaches of the Board's authority. While Costco has failed to establish the invalidity of WAC 314-23-070

---

[21] Because this premise of the Board's argument is flawed, we need not determine whether the extension of credit or giving of a rebate after a certain amount of product is purchased would constitute "moneys or moneys' worth" under RCW 66.28.305.

[22] The Board does not explain why it asserts that an extension of credit or a rebate are necessarily part of any sale of wine or spirits involving multiple deliveries over time. It just asserts that it is so.

and WAC 314-23-075,[23] we agree that WAC 314-23-065, WAC 314-23-080, and WAC 314-23-085 conflict with RCW 66.28.170, exceed the Board's authority, and are invalid.

Costco first asserts that WAC 314-23-065 and WAC 314-23-070, in tandem, prohibit price differentials expressly permitted by RCW 66.28.170. WAC 314-23-065(1)(j) prohibits "[d]iscriminatory pricing practices as prohibited by law or other practices that are discriminatory in that the product is not offered to all retailers in the local market at the same price." Local market is defined in WAC 314-23-070 as "businesses in geographic recognized market areas such as town, city, county or other recognized geographic area in which distribution services are provided." WAC 314-23-070 also specifies that for purposes of differential pricing, on-premises retailers (restaurants/bars) are a separate market from off-premises retailers (liquor stores). According to Costco, these regulations combine to prohibit price differentials for sales within the same geographic area despite the fact that RCW 66.28.170 contains no such prohibition. The Board's only response is to assert that it copied the language of WAC 314-23-065 from RCW 66.28.285(6)(j), and that it therefore must be valid.

Costco has the better argument. RCW 66.28.170 sets forth no local market limitations, and RCW 66.28.285(6)(j)'s application is explicitly limited to

_____

[23] Costco did not present argument in its briefing to support its contention that WAC 314-23-075 is contradictory to RCW 66.28.170. When pressed to explain its position at oral argument, Costco asserted that WAC 314-23-075 is invalid because it prohibits all discounts based on a commitment from a retailer to purchase a particular percentage of back bar, well drinks, or wines by the glass regardless of individual circumstances. Costco admitted that its objection is that the rule has a potentially broad application. But the mere breadth of a rule is insufficient to demonstrate invalidity. Costco failed to establish that any portion of the rule is inconsistent with the statute.

cross-tier ownership between manufacturers, distributors, and retailers of alcohol. RCW 66.28.285. As explained in Part C, RCW 66.28.170 precludes extending the application of RCW 66.28.285(6)(j) to any context beyond cross-tier ownership. Thus, WAC 314-23-065 conflicts with RCW 66.28.170, exceeds the authority of the Board, and is invalid.[24]

Costco next asserts that WAC 314-23-080 and WAC 314-23-085 also act in tandem to bar price differentials authorized by RCW 66.28.170. WAC 314-23-080 permits volume discounts but requires that such discounts "be based solely on the volume of the spirits and/or wine that is purchased by a retailer from a distributor or other licensed suppliers." WAC 314-23-080(1). WAC 314-23-085 further limits volume discounts, asserting that volume discounts "must be based on the spirits or wine delivered in a single shipment" and that "[v]olume discounts may only be provided based on combined orders by one or more licensees to the 'central warehouse' or a single location to which the order is delivered." WAC 314-23-085(2), (3).[25] Additionally, WAC 314-23-080 also allows differential pricing in sales of wine between on-premises and off-premises retailers, but

---

[24] Although Costco asserts that WAC 314-23-070 must also be invalid, without the operative provision in WAC 314-23-065, Costco does not identify any reason why WAC 314-23-070, as a purely definitional rule, is contrary to RCW 66.28.170.

[25] In 2016, the legislature enacted an amendment to RCW 66.28.340, inserting the following language:

> For purposes of negotiating volume discounts, a group of individual retailers authorized to sell both wine and spirits for consumption off the licensed premises may accept delivery of wine and spirits at a single location, which may be their individual licensed premises or at any one of the individual licensee's premises, or at a warehouse facility registered with the board.

RCW 66.28.340(2) (Laws of 2016, ch. 190, § 2).

The use of "may" in this amendment gives rise to a concern that the statute conflicts with WAC 314-23-085's prohibition of volume discounts on orders delivered to multiple locations. But because the parties did not address this possibility in their briefing, we decline to base our decision on the effect, if any, of the amended statute.

places limits on such differential pricing for the sale of spirits: "A new product to the market may be sold to on-premises retailers at an 'introductory price' for a maximum of six months. After the six-month introductory period the price for on-premises and off-premises retailers must be the same price for the same volume purchased." WAC 314-23-080(2)(a). According to Costco, these rule limitations on volume discounts and on price differentials for the sale of spirits between on-premises and off-premises retailers conflict with RCW 66.28.170 because the legislature set forth no such limitations.

In response, the Board appears to assert that WAC 314-23-080 and WAC 314-23-085 are valid because (1) the volume discounts prohibited by the rules are prohibited by RCW 66.28.305, (2) the rules do not bar all volume discounts and price differentials allowed by the statute, and (3) the bona fide business purpose of marketing new spirits products disappears after six months, removing the bona fide business factor which would permit a price differential in the sale of spirits to on-premises and off-premises retailers.

None of the Board's arguments are meritorious. We addressed the Board's first argument herein in Part C; the Board's assumption that volume discounts over time necessarily involve an extension of credit or a rebate is incorrect. The Board's second argument is based on another faulty premise: that the question is whether the rules permit any of the price differentials permitted by the statute. The question, however, is not whether the rules allow for some of the same price differentials as the statute allows, it is whether the rules prohibit any price differentials that are authorized by the statute. The Board's third

justification for the rules suffers from a similarly flawed analysis; even assuming that the Board is correct that the marketing benefit justifying different pricing between on-premises and off-premises retailers disappears after six months of a spirit being on the market, other business factors on which the statute permits price differentials to be based remain.

The Board does not point to any language in RCW 66.28.170 that imposes the broad limitations on volume discounts and differential pricing in sales of spirits between on-premises and off-premises retailers that are set forth in WAC 314-23-080 and WAC 314-23-085. The statute is broader than the rule. Thus, the rules conflict with RCW 66.28.170, exceed the authority of the Board, and are invalid.

III

Costco next contends that the Board's trade practice rules are arbitrary and capricious. Because we conclude that the Board exceeded its authority when promulgating WAC 314-23-065, WAC 314-23-080, and WAC 314-23-085, we need not determine whether those rules are also arbitrary and capricious. Thus, we address Costco's contention as it relates to WAC 314-23-070 and WAC 314-23-075.

Costco asserts that these rules are arbitrary and capricious because the Board failed to explain its reasoning to support the rules, the rules drew arbitrary boundaries around permissible behavior, and the Board ignored evidence. In response, the Board asserts that it properly considered public comment and

explained its rulemaking in its CES and that its rules are not arbitrary and capricious. We agree.

> "Arbitrary and capricious" refers to "willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action. Where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous."

Lane v. Port of Seattle, 178 Wn. App. 110, 126, 316 P.3d 1070 (2013) (quoting Abbenhaus v. City of Yakima, 89 Wn.2d 855, 858-59, 576 P.2d 888 (1978)). The bases for our review of whether an agency rule is arbitrary and capricious is the agency's rule-making file and the agency's explanations for its rule. Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n, 148 Wn.2d 887, 906, 64 P.3d 606 (2003).

Herein, Costco first asserts that the Board failed to explain its reasoning to support the rules.[26] This assertion is clearly rebutted by the record, which sets forth, in the Board's CES, explanations for its rules and responses to comments received during the rule-making process. The CES explains why the Board began the rule-making process, it explains what statutory authority the Board relied on to justify its rule making, and it offered responses to comments received during the rule-making process explaining whether such comments were incorporated into the final rules and why they were or were not.

---

[26] Costco also appears to assert that the rules are arbitrary and capricious because the Board did not offer an explanation for the rules based on protecting the public safety. Why Costco believes that such a public safety focused explanation is required was never clearly articulated in its briefing or at oral argument.

Costco next asserts that the rules arbitrarily allow certain price differentials permitted by RCW 66.28.170 while disallowing the majority of statutorily permitted price differentials. This contention is a repeat of its argument that the Board exceeded its statutory authority because the rules conflict with RCW 66.28.170. We reject this argument because, as we explained herein in Part II, Costco has not established that WAC 314-23-070 and WAC 314-23-075 conflict with RCW 66.28.170.

Costco's final argument, that the Board disregarded evidence to enact the rules, is also clearly rebutted by the record. The Board held numerous public hearings and received comments from stakeholders, including both comments in support of the rules and comments critical of the rules. This resulted in a voluminous administrative record. The CES directly responds to the comments from stakeholders critical of the Board's rules. Merely because the Board ultimately did not find the evidence provided by those stakeholders persuasive does not mean that such evidence was ignored. Costco does not establish that the Board acted arbitrarily or capriciously in adopting the challenged rules.

IV

We conclude that WAC 314-23-065, WAC 314-23-080, and WAC 314-23-085 conflict with RCW 66.28.170, exceed the authority of the Board, and are invalid. The invalidity of WAC 314-23-070 and WAC 314-23-075 has not been demonstrated.

Affirmed in part, and reversed in part.

_____ Dwyer, J.

WE CONCUR:

_____ Mann, ACJ

_____ Leach, J.