Mr. Justice MILLER
 

 delivered the opinion of the court.
 

 It is to be observed that neither party prays for a dissolution of the partnership. Indeed, the bill and cross-bill, and the answei's to both, proceed upon- principles which do not recognize the partnership as existing. The complainant seems to imply that by reason of Whipple’s course of conduct he is remitted to all his rights as the inventor, aud clainis that being the sole inventor of the successful machine he is entitled to all the benefit of it. Whipple assumes that by his purchase from Ambler, and Ambler’s misconduct, that the partnership has been dissolved, and lie has succeeded to all its rights, if they are of any value.
 

 The testimony is voluminous and contradictory. In the. view we shall take of the case, while the decision will mainly turn on these questions of fact, we shall only state the effect which the testimony has had upon our minds without referring to it in detail.
 

 1. If the complainant really released or sold his interest in the partnership business, or in the patent of Whipple and Ambler, his case is at an end, aud we will, therefore, consider that question first.
 

 The instrument of writing dated September 24th, 1869; is supposed to have that effect. There is no doubt that the language of the instrument
 
 *
 
 is sufficient for the purpose
 
 *556
 
 for which it was intended, but it wants the signature of Ambler. Nor is it pretended that he ever signed it or any copy of it. It is clearly on. its face a paper which requires the signature of both parties to make it binding on either. The- releases ,and assignments are mutual, aud each is the consideration of the other, and it requires no great penetration to see that it was drawn in the interest of Whipple, who signed it, and not iu the interest of Ambler, who did not sign it.
 

 ; But it is argued that the paper was procured from Whipple by Martin, the agent of Ambler, at Ambler’s request, and was signed by Whipple and delivered to Martin; that Martin delivered it to A'mbler; who received a eopjy of it without objection, and promised’to sign it. Admitting all this to be true, it is very clear that both parties intended to have a written instrument signed by each as the evidence of any contract they might make on that subject, and neither considered any contract concluded until it was fully executed. Under these circumstances Ambler had a right to decline to sign .the paper, and until he signed he was not bound by it. It was not drawn by him, nor at his dictation. It was first signed by Whipple, and drawn up by him or in his presence, and made to suit his purposes. It is idle to say that because Ambler took a copy of it from Martin to examine he became a party to it, though he-never signed it.
 

 Further, we are of opinion, notwithstanding Martin’s declai’ation that he acted on Ambler’s suggestion, that he was throughout the whole affair acting for Whipple, and governed, solely by his interest. This transaction does not, in .our opinion, establish any release or transfer of Ambler’s interest iu the partnership concern.
 

 2.
 
 Nor is thére any'such evidence of abandonment of the enterprise on the part of Ambler as to justify the court in holding that he had lost or forfeited his rights in the venture. It is true that about the middle of August he left Washington City for a week or two,, but whe.n he returned he found himself excluded from the workshops and from all participation iu Whipple’s plans, and it seems' probable he was by
 
 *557
 
 Whipple’s authority forbidden to go there before he left the city. It is unreasonable to call this a voluntary abandonment of the enterprise.
 

 3.
 
 What weight would be given to the charges of bad character, drunkenness, and dishohesty in a suit by Whipple to dissolve the partnership we need not here state.' If all that is charged were proved in such a suit it would make a strong case for relief, on such terms as equity might impose for the protection of both parties. But they did not authorize Whipple, of his own motion, to treat the partnership as ended and take to himself all the benefits of their joint labors and joint property. It seems also to be a fair .inference from the pleadings and other circumstances that Whipple must have known of Ambler’s conviction for felony
 
 before
 
 he entered into the agreement with him.
 

 We are, therefore, of opinion that the case shows nothing which deprives Ambler of his rights under the original contract with Whipple.
 

 4.
 
 We are also of opinion that Whipple is chargeable as trustee for Ambler with one-half of all that has been realized or may be realized from the use of the patent to Whipple and Ambler and the patent to Whipple and Dickerson.
 

 This conclusion we rest upon'the sixth article of the agreement between Whipple and Ambler,
 
 *
 
 This article provides that any improvement or modification of the invention which may be made by either party, in this country or any other, for which a patent may be obtained, shall enure to the joint benefit of both. In the peculiarly close and confidential relation which the parties assumed toward each other in regard to an. invention which both understood to be imperfect, undeveloped, and the subject of future trial and experiment, this provision w7as eminently wise aud necessary. And since Whipple was, by the assignment of Ambler, invested with the legal title of the patent and chief conduct of the' afiairs of the partnership, he was under a peculiar obligation of good faith as both partner and trustee óf Ambler.
 

 
 *558
 
 Notwithstanding the bills, cross-bills, and supplemental bills set hp both by the patent to Whipple and Ambler and the patent to Whipple and Dickerson, No. 95,665, and'another issued to them pending the suit, No. 102,662, which are charged by Ambler to be all covered by his invention, and by the others to be totally distinct, none of these patents are found in the record. It is impossible, therefore, for this court to give any
 
 conclusive
 
 opinion or judgment as to how far they are identical, or how far there may be distinctive features, under which the whole or some part of the two latter patents might be sustained. We base our decree on other principles.
 

 We are satisfied, from the testimony in the case, that the results of the experiments conducted by. Ambler and Whipple in their joint enterprise developed the practicability of success in obtaining the object of their pursuit; that these experiments disclosed the fact that while they had mainly relied on the effect of heat by. steam, applied to petroleum indirectly by encompassing the vessel in which the petroleum was, by the steam- let into an outer chamber, it was'found that it was necessary to introduce the steam into the vessel, thus bringing it into direct contact with the petroleum.
 

 Whether Ambler had seen this as clearly as Whipple is not very, well of satisfactorily shown. But it is proved to our entire .satisfaction that when Whipple saw this point, and that through it success was within his reach, he immediately recognized its great value. This experiment wms made at .the same shopa, with tile same machines, and in the same pursuit, which for three months had engaged the active euergies of both Ambler and Whipple. The weight of evidence is that Ambler was preseut aud assisting, but this is denied by other witnesses.
 

 What is clear to us.is that as soem as Whipple recognized the value of this discovery he made up his mind to be rid of Ambler.
 

 The undisputed facts of the case,
 
 *
 
 taken in connection
 
 *559
 
 with much other testimony of a direct character, convince us that Whipple, in violation of his trust to Ambler, and in fraud of his rights, deliberately entered upon a scheme by which Ambler was to be deprived of the benefits resulting from success in their joint experiments. That in pursuit of this scheme he called in Dickerson* who,. without «having invented anything, and in a remarkably short space of time, procured letters-patent to' issue to,himself and Whipple which embraced the results of Ambler’s discoveries and ex-, periments, whether they embraced anything else or not.
 

 For all that has come to Whipple’s hands, for all that is included in. the patents to him and'Dickerson, he is, under the terms of the sixth article of the agreement, a trustee for Ambler to the extent of one-half,, and must be so charged and held to account in this proceeding.
 

 As to Dickerson, while he is not a trustee under that article, we are of opinion that he has so far knowingly connected himself with and aided in the fraud on Ambler that he cannot resist Ambler’s right to an undivided half of both the patents to Dickerson and Whipple, and of the profits made or to be made out of them. What rights or remedies he may have against Whipple we do not decide.
 

 The result of these views is that the decree of the Supreme Court of the District must be reversed; that a decree must be entered in that court declaring Whipple and Dickerson to hold in trust for.the benefit of Ambler to the extent of one-half the two patents issued to them, mentioned in the pleadings as 95,665 and 102,662; that an accounting be.had as to the profits realized by them, or either of them, from the use or sale, or otherwise, arising from said patents, and for such other and further proceedings as may be
 

 In conformity to this opinion.