# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STARKIST COMPANY, | No. 82725-1-I |
| Appellant, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| THE STATE OF WASHINGTON, | |
| Respondent, | |
| and | |
| DONGWON INDUSTRIES CO. LTD., AND CHRISTOPHER LISCHEWSKI, | |
| Defendants. | |

ANDRUS, C.J. — StarKist Company appeals a summary judgment order holding it jointly and severally liable for the harm it and its competitors, Chicken of the Sea and Bumble Bee Foods, caused consumers when they conspired to fix the prices of packaged tuna in violation of RCW 19.86.030.

We reverse the summary judgment order—not because, as StarKist contends, it can be liable only for its own profits gained through the conspiracy, but because RCW 19.86.080 does not mandate joint and several liability. The statute instead confers discretion on the trial court to determine what judgment "may be necessary" to restore to consumers the money acquired by an unlawful conspiracy.

No. 82725-1-I/2

The trial court may impute to one conspirator the actions of all coconspirators and, as a result, may order StarKist to pay an amount equal to the conspiracy's gains if the court deems it necessary to do so.

But the State of Washington settled with coconspirators Chicken of the Sea, and Bumble Bee's chief executive officer, Christopher Lischewski, for a fraction of these alleged consumer losses. And StarKist contends it was an insignificant player in the overall price-fixing scheme. We therefore reverse the summary judgment order imposing joint and several liability on StarKist "for the harm caused by its co-conspirators Bumble Bee and Chicken of the Sea" and remand for the trial court to enter findings of fact to justify any restitution it orders StarKist to pay under RCW 19.86.080.

FACTS

In 2016, Chicken of the Sea International (COSI) disclosed to federal investigators that it had conspired with competitors, including StarKist and Bumble Bee, to fix prices on packaged tuna products. Following these disclosures, Bumble Bee and StarKist were charged with and pleaded guilty in federal court to conspiring to fix prices with competitors in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Both companies admitted that from November 2011 until December 2013, they "participated in a conspiracy among major packaged-seafood-producing firms, the primary purpose of which was to fix, raise, and maintain the prices of packaged seafood sold in the United States."

In March 2020, the State of Washington, through the Attorney General, brought an antitrust lawsuit against Chicken of the Sea, seeking an injunction, damages, restitution, and other relief under the Consumer Protection Act (CPA)

- 2 -

for this price-fixing conspiracy. Soon thereafter, Chicken of the Sea entered into a consent decree in which it agreed to pay $500,000 to the State of Washington in exchange for a release of liability.

On June 2, 2020, the State of Washington brought a similar antitrust lawsuit against StarKist, StarKist's parent company, Dongwon Industries Co. Ltd., and Bumble Bee Foods LLC's former chief executive officer, Christopher Lischewski, alleging these defendants had engaged in a conspiracy in restraint of trade with Chicken of the Sea.

In October 2020, the State entered into a consent decree with Lischewski in which he agreed to pay $100,000 to the State of Washington to compensate consumers allegedly harmed by the conspiracy.

In February 2021, the trial court held StarKist liable as a matter of law under RCW 19.86.030 for engaging in a price-fixing conspiracy during the period specified in its federal guilty plea.

On March 9, 2021, the State disclosed the report of its expert economist, Dr. David Sunding, who opined that the price-fixing scheme between StarKist, Chicken of the Sea, and Bumble Bee caused Washington consumers to overpay for packaged tuna by a total of $11,981,526. Sunding attributed $1,074,589 of the total losses to StarKist's sales.

The State then moved for partial summary judgment, seeking to hold StarKist "jointly and severally liable for the actions of its co-conspirators." The trial court granted the motion, concluding that StarKist "is jointly and severally liable for the harm caused by its co-conspirators Bumble Bee and Chicken of the Sea as a result of the price-fixing conspiracy from at least November 2011 continuing

No. 82725-1-I/4

through . . . December 2013." StarKist sought and we granted discretionary review of this order.

## ANALYSIS

StarKist contends the trial court erred in imposing joint and several liability as a matter of law, arguing that the tort principle of joint and several liability cannot apply to an equitable action for restitution under RCW 19.86.080. We conclude that RCW 19.86.080(2) and (3) give the trial court broad discretion to determine what judgment "may be necessary" to restore to consumers monies acquired by an unlawful conspiracy. The trial court may impute to one conspirator the actions of all coconspirators and, as a result, may order StarKist to pay an amount equal to all consumer losses from the entire conspiracy if the court deems it necessary to do so. But we reverse the trial court's summary judgment order because RCW 19.86.080 does not mandate joint and several liability, as the trial court's order implies.

### Standard of Review

We review a summary judgment order de novo. *Seattle Events v. State,* 22 Wn. App. 2d 640, 648-49, 512 P.3d 926 (2022). Statutory interpretation of the CPA presents an issue of law that this court also reviews de novo. *State v. LG Elecs.*, 186 Wn.2d 1, 7, 375 P.3d 636 (2016).

### Conspiracies in Restraint of Trade

RCW 19.86.030 declares unlawful "[e]very contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce." Conspiring with competitors to fix prices is a per se illegal restraint of trade under

- 4 -

No. 82725-1-I/5

the Sherman Antitrust Act,[1] *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886, 127 S. Ct. 2705, 168 L. Ed. 2d 623 (2007), and a violation of the CPA.[2] *See Murray Pub. Co., Inc. v. Malmquist*, 66 Wn. App. 318, 325, 832 P.2d 493 (1992) ("RCW 19.86.030 is essentially identical to section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.")

The trial court held StarKist liable under this statute and StarKist does not challenge this ruling. There is no dispute that from November 2011 until December 2013, StarKist engaged in an unlawful conspiracy with Chicken of the Sea and Bumble Bee to fix the price of packaged tuna in Washington.

The CPA provides two methods for enforcing RCW 19.86.030. RCW 19.86.090 authorizes any person injured in their business or property by a violation of RCW 19.86.030 to bring a civil action for "actual damages" and to seek treble damages. It also authorizes the State, when injured directly or indirectly by a violation of the act, to sue for its actual damages. *LG Elecs.*, 186 Wn.2d at 8.

RCW 19.86.080, the statute at issue here, authorizes the attorney general to bring an enforcement action "in the name of the state, or as *parens patriae* on behalf of persons residing in the state" for injunctive relief.[3] In addition, under RCW 19.86.080(2) and (3), the court has "broad, discretionary authority to order

---

[1] 15 U.S.C. § 1.

[2] The legislature patterned the CPA's antitrust provisions after federal antitrust analogues and federal court decisions interpreting substantive violations of the Sherman Act guide Washington courts in constructing the state law. RCW 19.86.920 (in interpreting CPA, courts to be guided by final decisions of federal courts and final orders of Federal Trade Commission interpreting federal statutes dealing with same or similar matters).

[3] An action by the State of Washington for injunctive relief and restitution under RCW 19.86.080 is not subject to the CPA's four-year statute of limitations, RCW 19.86.120, because that provision by its plain language applies only to "claims for damages." *LG Elecs.*, 186 Wn.2d at 9. Nor is the State subject to the general statute of limitations of RCW 4.16.160 because actions brought in the name of the state are excluded from that statute. *Id.* at 15.

- 5 -

No. 82725-1-I/6

restitution." *State v. Comcast Cable Commc'ns Mgmt., LLC*, 16 Wn. App. 2d 664, 686, 482 P.3d 925 (2021). The statute provides:

> (2) The court may make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any act herein prohibited or declared to be unlawful.

> (3) Upon a violation of RCW 19.86.030, 19.86.040, 19.86.050, or 19.86.060, the court may also make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property, real or personal, which may have been acquired, regardless of whether such person purchased or transacted for goods or services directly with the defendant or indirectly through resellers. The court shall exclude from the amount of monetary relief awarded in an action pursuant to this subsection any amount that duplicates amounts that have been awarded for the same violation. The court should consider consolidation or coordination with other related actions, to the extent practicable, to avoid duplicate recovery.

RCW 19.86.080; *see also LG Elecs.*, 186 Wn.2d at 17 (Supreme Court described the attorney general's claims under RCW 19.86.080(2) and (3) as "restitution claims"); *State v. Ralph Williams' North West Chrysler Plymouth, Inc.*, 87 Wn.2d 298, 321, 553 P.2d 423 (1976) (when the attorney general proves a defendant has acquired possession of property of a customer unlawfully, the court can order restitution).

When the attorney general seeks a restitution award under RCW 19.86.080(2) or (3), it is not required to prove causation or injury. *State v. CLA Estate Services, Inc.*, No. 82529-1-I, slip op. at 23 (Wash. Ct. App. Aug. 22, 2022).[4] And the court may calculate restitution based on the amount of illegal gains rather than net damages sustained by consumers. *Id.* at 24.

---

[4] https://www.courts.wa.gov/opinions/pdf/825291.pdf

- 6 -

No. 82725-1-I/7

<u>Scope of Restitution under RCW 19.86.080</u>

In this appeal, StarKist argues that any restitution award must be limited to the illegal gains StarKist itself enjoyed and cannot extend to the illegal gains realized by its coconspirators. It contends that the tort concept of "joint and several liability" is a principle applicable only to claims for actual damages under RCW 19.86.090 and cannot apply to RCW 19.86.080's equitable restitution remedy.

Our analysis of RCW 19.86.080 begins with examining the statute de novo to determine the legislature's intent. *State v. Hawkins*, No. 100060-0, slip op. at 13 (Wash. Oct. 27, 2022).[5] We discern legislative intent "from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd*., 182 Wn.2d 342, 350, 340 P.3d 849 (2015) (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). We read each provision of a statute together with its related provisions to determine the legislative intent underlying the entire statutory scheme. *In re Estate of Kerr*, 134 Wn.2d 328, 343, 949 P.2d 810 (1998).

Based on these principles of statutory construction, we reject StarKist's argument that it cannot be held liable for unlawful gains realized by the conspiracy under RCW 19.86.080 for three reasons. First, the plain language of RCW 19.86.080 does not limit restitution to monies acquired by a single coconspirator. Second, although neither RCW 19.86.090 nor 19.86.080 explicitly refers to the

---

[5] https://www.courts.wa.gov/opinions/pdf/1000600.pdf

common law principles of joint and several liability, these statutory provisions must be read together with RCW 19.86.030, the provision outlawing conspiracies in restraint of trade. Under well-established Washington common law, a conspiracy is a single enterprise for which all coconspirators are responsible. Finally, federal antitrust case law does not require a different result.

1.  Plain Text of RCW 19.86.080

StarKist first contends that RCW 19.86.080 limits its liability to profits it acquired from the conspiracy. But the plain text of RCW 19.86.080 does not support any such limitation.

RCW 19.86.080(2) states that "[t]he court may make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property, real or personal, which may have been acquired by means of any act herein prohibited or declared to be unlawful." The "prohibited" or "unlawful" acts referred to in this paragraph are the acts explicitly outlawed by other provisions of the CPA, including RCW 19.86.030 prohibiting conspiracies in restraint of trade. The court may thus order a party participating in an unlawful conspiracy to pay "any moneys . . . which may have been acquired" by the conspiracy.

Neither RCW 19.86.080(2) nor .080(3) says restitution must be limited to any moneys which the defendant may have acquired from their participation in the conspiracy. We will not add words to a statute where the legislature has chosen not to include them. *Lake v. Woodcreek Homeowners Ass'n,* 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

StarKist directs our attention to a reference to "the defendant" in RCW 19.86.080(3). That provision now reads:

> Upon a violation of RCW 19.86.030 . . . the court may also make such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property, real or personal, *which may have been acquired, regardless of whether such person purchased or transacted for goods or services directly with the defendant or indirectly through resellers*. The court shall exclude from the amount of monetary relief awarded in an action pursuant to this subsection any amount that duplicates amounts that have been awarded for the same violation. The court should consider consolidation or coordination with other related actions, to the extent practicable, to avoid duplicate recovery.

(Emphasis added.) StarKist contends that "the natural reading of this clause is that restitution is limited to the recovery of property that is 'acquired' by the 'defendant,' regardless of whether the defendant acquires it by transacting directly with consumers, or indirectly through resellers." We disagree with this reading.

The legislature added subparagraph (3) to RCW 19.86.080 in 2007, not as a way of restricting the scope of restitution that a court could order, but as a way to expand the class of customers on whose behalf the Attorney General could bring suit. The Final Bill Report for Substitute Senate Bill 5228 explained:

> The Attorney General may bring an action to restrain a person from violating the CPA. An action by the Attorney General may seek to prevent violations of the act and may seek relief for persons injured by violation of the CPA. As a result of a federal court ruling,[6] a question has arisen as to whether the Attorney General is authorized to bring an action for a CPA violation on behalf of persons who are "indirect purchasers" of goods or services. . . .
>
> Many states have enacted laws that allow an indirect purchaser to bring a suit directly, while others allow such suits only when brought by the Attorney General on behalf of the indirect purchasers. Washington has not enacted either type of law. However, based in

---

[6] The final House Bill Report on SSB 5228 identified the case as *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977), in which the United States Supreme Court held that under federal antitrust law, indirect purchasers could not bring an action for damages, but left open the possibility that states enacting their own laws could allow indirect purchasers to sue for unfair business practices. *See* H.B. REP. ON SUBSTITUTE S.B. 5228, 60th Leg., Reg. Sess. (Wash. 2007), available at 5228-S BRH APH 07.pdf (wa.gov).

No. 82725-1-I/10

> part on the state court of appeals decision in *Blewett v. Abbott Laboratories*, 86 Wn. App. 782 (1997), the state Attorney General has brought suits on behalf of indirect purchasers under the common law doctrine of *parens patriae* . . . . The Attorney General reports, however, that in at least one multi-state case, a federal judge has rejected the Attorney General's attempts to sue on behalf of indirect purchasers.

FINAL B. REP. ON SUBSTITUTE S.B. 5228, 60th Leg., Reg. Sess. (Wash. 2007).[7] The addition of RCW 19.86.080(3) was thus intended to give the court the authority to order restoration for any injured party "regardless of whether the injury was the result of a direct or indirect purchase of goods or services" from the defendant. *Id.* The amendment expanded the consumers protected by the statute; it did not restrict the amount of restitution the court could order against any particular defendant.

RCW 19.86.080 is a grant of "broad, discretionary authority" to courts to order restitution. *State v. Comcast Cable Commc'ns. Mgmt., LLC*, 16 Wn. App.2d 664, 686, 482 P.3d 925 (2021). In *State v. Ralph Williams' N. W. Chrysler Plymouth, Inc.*, 82 Wn.2d 265, 277-78, 510 P.2d 233 (1973), our Supreme Court affirmed a liberal construction of the restitution provision, as required by RCW 19.86.920, and "decline[d] to limit the traditional equity powers of the court." StarKist's restrictive interpretation of RCW 19.86.080 conflicts with RCW 19.86.920 and our case law liberally interpreting the restitution provision of the CPA.

> 2. Common Law of Conspiracy

---

[7] Available at 5228-S.FBR.pdf (wa.gov).

SkarKist's interpretation is also unpersuasive because it fails to address the common law of conspiracy. The word "conspiracy" in RCW 19.86.030 is not defined in the CPA. But this legal term has a well-understood legal meaning and we assign a familiar legal term in a statute its familiar legal meaning. *Floeting v. Group Health Cooperative*, 200 Wn. App. 758, 764, 403 P.3d 559 (2017).

A conspiracy is "a combination of two or more persons to commit a criminal or unlawful act, or to commit a lawful act by criminal or unlawful means." *Sears v. Int'l Bhd. of Teamsters, Chauffeurs, Stablemen and Helpers of Am.*, 8 Wn.2d 447, 452, 112 P.2d 850 (1941) (quoting *Eyak River Packing Co. v. Huglen*, 143 Wash. 229, 234, 255 P. 123 (1927)). Under Washington common law, "[e]very person who enters into a conspiracy, no matter whether at its beginning or at a later stage of its progress, is in law a party to every act of the conspirators, and is liable for all of the acts done in pursuance of the conspiracy in the same manner that they would be had they been a party to all of the wrongful acts." *Id.* We presume the legislature enacted the CPA "with full knowledge of existing laws." *Maziar v. Dep't of Corr.*, 183 Wn.2d 84, 88, 349 P.3d 826 (2015) (quoting *Thurston County v. Gorton*, 85 Wn.2d 133, 138, 530 P.2d 309 (1975)).

We can find no basis for limiting the application of this conspiracy case law to cases in which the plaintiff seeks monetary damages under RCW 19.86.090, rather than equitable relief under RCW 19.86.080. In Washington, all distinctions between actions at law and actions in equity have been abolished. *Hotchkin v. McNaught-Collins Imp. Co.*, 102 Wash. 161, 165, 172 P. 864 (1918). The nature of one's claim may govern whether there is a right to a jury trial, *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 365, 617 P.2d 704 (1980) (constitutional right to jury

No. 82725-1-I/12

trial applies to civil actions purely legal in nature and not to actions purely equitable in nature), but does not preclude a court from holding one conspirator liable for the actions of its coconspirators.

Our Supreme Court has applied conspiracy concepts in cases brought in equity. In *Lyle v. Haskins*, 24 Wn.2d 883, 168 P.2d 797 (1946), the purchasers of a sawmill, Lyle and Nelson, sought to enjoin the sellers, the Haskins, and another couple, the Johnsons, from operating a competing sawmill based on their conspiracy to violate a noncompetition agreement, to which the Haskins had agreed. The court, noting that the case had been brought in equity, affirmed an injunction for the purchasers, finding the evidence sufficient to support the conclusion that the seller violated the restrictive covenant in the sales agreement and "that Harold Haskins and [his] wife entered into a conspiracy with [several people] to violate the restrictive covenant, and that Johnson and [Haskins' son, Robert] were aiding, abetting, conspiring and confederating with Harold Haskins in the violation of such covenant." *Id.* at 899. Citing 11 Am. Jur. § 45, our Supreme Court stated that "the liability of the conspirators is joint and several." *Id.* at 900. It held that Johnson, "entering into the conspiracy after it was formed . . . became liable for all acts committed by any of the other parties, either before or after their entrance, in furtherance of the common design." *Id.*

Also instructive is *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp, Inc.*, 114 Wn. App. 151, 52 P.3d 30 (2002). In that case, an insurance agency brought suit against a competitor for tortious interference and civil conspiracy after the competitor hired its former employee, with whom it had a noncompetition agreement. The agency obtained an arbitration award against the former

- 12 -

employee for lost revenue based on the employee's diversion of insurance business to the competitor. *Id.* at 157. The court of appeals held that the competitor, as a coconspirator of the former employee, was collaterally estopped from relitigating the amount of damages assessed by an arbitrator against the former employee, despite the fact the competitor had not participated as a party in the arbitration. *Id.* at 161. Collateral estoppel is an equitable doctrine. *Weaver v. City of Everett*, 194 Wn.2d 464, 472, 450 P.3d 177 (2019). Yet, this court had no difficulties in invoking that doctrine to impute liability of one conspirator to another.

Because we presume the legislature knows the law in the area in which it is legislating, we will not construe a statute in derogation of that common law absent an express legislative intent to change the law. *Wynn v. Earin*, 163 Wn.2d 361, 371, 181 P.3d 806 (2008). We have no such expression of legislative intent here. We therefore conclude that when the legislature made conspiracies in restraint of trade unlawful and gave courts the authority to restore monies acquired through such a conspiracy, that authority included the pre-existing power under common law to hold one conspirator liable for all of the acts done in pursuance of the conspiracy, even if they were not a party to all of the wrongful acts.[8]

3. Federal Antitrust Case Law

StarKist finally contends that requiring it to pay restitution based on the actions of its coconspirators is inconsistent with federal antitrust law. RCW

---

[8] StarKist also contends the State should be judicially estopped from arguing that StarKist's liability is joint and several based on the State's characterization of its claim as equitable when it moved to strike StarKist's jury demand. StarKist contends that this argument is "flatly inconsistent with its argument now that the court should apply the tort doctrine of joint and several liability based on antitrust law." StarKist's argument is based on the erroneous premise that a trial court cannot, in equity, order one conspirator to pay restitution for profits realized by a coconspirator. The State's arguments are not inconsistent and judicial estoppel does not apply.

19.86.920 does provide that we should look to federal antitrust case law in interpreting the CPA:

> The legislature hereby declares that the purpose of this act is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition. It is the intent of the legislature that, in construing this act, the *courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters* . . . . To this end this act shall be liberally construed that its beneficial purposes may be served.

(Emphasis added.) But we may also decline to follow federal law where the language and structure of the CPA departs from otherwise analogous federal statutes. *L.G. Elecs.*, 186 Wn.2d at 10 (Supreme Court refuses to interpret statute of limitations provision in CPA similarly to statute of limitations in Clayton Act, 15 U.S.C. § 15c, because the provisions were not parallel).

StarKist relies on *Honeycutt v. United States*, 581 U.S. 443, 137 S. Ct. 1626, 198 L. Ed. 2d 73 (2017), to argue that requiring it to pay for the actions of coconspirators is impermissible. In *Honeycutt*, after a hardware store owner and his brother, the sales manager, were convicted of conspiring to distribute iodine used to manufacture methamphetamine, the Sixth Circuit held that the brothers, as coconspirators, could be held jointly and severally liable for "any proceeds of the conspiracy." 137 S. Ct. at 1631. The Supreme Court reversed, holding that the language of the applicable statute did not authorize a defendant to be held jointly and severally liable for property that anyone other than the defendant derived from the crime. *Id.* at 1630. The holding in *Honeycutt* was based on the language of the federal criminal forfeiture statute, 21 U.S.C. § 853, that clearly

- 14 -

No. 82725-1-I/15

limited forfeiture to "proceeds *the person obtained*, directly or indirectly, as the result of such violation." 21 U.S.C. § 853 (emphasis added). There is no similar limiting language in either RCW 19.86.080(2) or (3).

StarKist also asks us to follow *Liu v. SEC*, __ U.S. __, 140 S. Ct. 1936, 207 L. Ed. 2d 401 (2020). In that case, the Securities and Exchange Commission (SEC) brought a civil enforcement action against developers of a cancer treatment center, alleging they engaged in a scheme to defraud foreign nationals investing in their center in violation of the Securities Act of 1933, § 77a *et seq.* and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq*. *Id.* at 1941-42. The SEC sought disgorgement of the total amount of money the developers had raised from investors under 15 U.S.C. § 78u(d)(5), which authorizes federal courts to grant "any equitable relief that may be appropriate or necessary for the benefit of investors." *Id.* at 1940. The district court rejected the developers' arguments that the disgorgement award should be reduced by their legitimate business expenses. It entered an order making the developers jointly and severally liable for the gross amount the developers had raised from investors. *Id.* at 1942.

The Supreme Court granted certiorari to determine whether 15 U.S.C. § 78u(d)(5) authorized the SEC to seek disgorgement "beyond a defendant's net profits from wrongdoing." *Id.* It determined that the "equitable relief" allowable under the statute was limited to the wrongdoer's net profits after deducting legitimate business expenses. *Id.* at 1946.

In dicta, the court addressed, but did not decide, whether joint and several liability was appropriate. *Id.* at 1947. It noted that while joint and several liability "sometimes [seems] at odds with the common-law rule requiring individual liability

- 15 -

for wrongful profits," the common law also permitted liability for "partners engaged in concerted wrongdoing." *Id.* at 1949 (citing *Ambler v. Whipple*, 87 U.S. 546, 20 Wall. 54, 22 L. Ed. 403 (1874)). It went on to state:

> The historic profits remedy thus allows some flexibility to impose collective liability. Given the wide spectrum of relationships between participants and beneficiaries of unlawful schemes—from equally culpable codefendants to more remote, unrelated tipper-tippee arrangements—the Court need not wade into all the circumstances where an equitable profits remedy might be punitive when applied to multiple individuals.

*Id.* It noted that the defendants were married and both were involved in the businesses that misappropriated investor funds. *Id.* It chose to "leave it to the Ninth Circuit on remand to determine whether the facts are such that petitioners can, consistent with equitable principles, be found liable for profits as partners in wrongdoing or whether individual liability is required." *Id.*

*Lui* does not advance StarKist's argument on appeal. First, the Supreme Court discussion regarding joint and several liability is dicta. Second, the court explicitly recognized that "partners" can, under certain circumstances, be held jointly and severally liable for the actions of other partners. To the extent *Lui* applies here, it is consistent with Washington common law on conspiracy liability.

Referencing *Lui*'s discussion regarding partnership liability, StarKist argues that the State did not allege or prove that it was in a legal partnership with COSI or Bumble Bee. This argument misreads *Lui*. The court's reference to "partners in wrongdoing" can hardly be understood as a requirement of an actual legal partnership. *Amber v. Whipple*, the case cited by the *Liu* court for the principle that partners engaged in concerted wrongdoing are jointly and severally liable, contained no such pleading or proof requirement. The *Amber* court simply

- 16 -

recognized that participants in a fraudulent patent scheme would be liable for "the profits realized by them, or either of them, from the use or sale, or otherwise, arising from said patents." 87 U.S. at 559. *Lui* does not require the existence of a legal partnership as a precondition to joint and several liability.

StarKist's argument has the additional flaw of disregarding both federal and Washington cases describing a conspiracy as "a partnership in a criminal purpose." *United States v. Kissel*, 218 U.S. 601, 608, 31 S. Ct. 124, 54 L. Ed. 1168 (1910); *State v. Dent*, 123 Wn.2d 467, 475, 869 P.2d 392 (1994). It is undisputed that StarKist conspired with Bumble Bee and COSI in a price fixing scheme—StarKist pleaded guilty in federal court to being a member of this conspiracy. To the extent *Lui* requires the existence of a "partnership," the State has established the existence of such a partnership here as a matter of law.

We conclude that RCW 19.86.080 gives the trial court the authority to hold StarKist liable for the actions of its coconspirators but it does not mandate such a result. The trial court has the discretion to decide that StarKist should be liable for the full amount of the conspiracy's illegal gains but it also has the discretion to tie StarKist's liability to the extent of its participation in the common enterprise.

<u>Summary Judgment Order</u>

The summary judgment order, however, did not represent an exercise of the trial court's discretion under RCW 19.86.080. Instead, the trial court held StarKist liable for the conspiracy's profits without explaining its rationale for exercising its discretion in this manner and appears to have rendered this ruling as a matter of law. The failure to exercise discretion is itself an abuse of discretion. *Bowcutt v. Delta North Star Corp.*, 95 Wn. App. 311, 320, 976 P.2d 643 (1999).

- 17 -

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

We therefore reverse the summary judgment order and remand to the trial court to allow it to determine, in the exercise of discretion, the amount of restitution it deems necessary under RCW 19.86.080.

Reversed.

_Andrus, C.J._

WE CONCUR: